425 Pa. 535 (1967)
Boslover Ahavas Achim Belzer Association, Appellant,
v.
Philadelphia Redevelopment Authority.
Supreme Court of Pennsylvania.
Argued January 11, 1967.
May 3, 1967.
Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.
*536 Edward L. Snitzer, with him Mesirov, Gelman, Jaffe & Levin, for appellant.
Frank B. Murdoch, with him Milton C. Sharp, and Schnader, Harrison, Segal & Lewis, for Redevelopment Authority, appellee.
OPINION BY MR. JUSTICE O'BRIEN, May 3, 1967:
Boslover Ahavas Achim Belzer Association (Boslover) is a nonprofit corporation which has been operating in the City of Philadelphia since 1898. It has an active membership of 1,000, most of whom are over 65 years of age, and was incorporated for the purpose of fostering and promoting American-Jewish culture, the ideas of American democracy, and the improvement and enrichment of the social life of its members. For 45 of the 68 years of its existence, it has owned and maintained a four-story building located at 701 Pine Street, Philadelphia. It has used this building for meetings of its members and has also rented the meeting rooms for various other social, beneficial, charitable and union organizations. This rental was without regard to race, creed, color or national origin, and from this, Boslover received approximately $10,000 per year.
On December 1, 1961, the Redevelopment Authority of the City of Philadelphia (Authority) prepared an Urban Renewal Plan for the Washington Square East Urban Renewal Area, and, on August 22 of 1962, submitted *537 a proposal to City Council, which proposal was approved on May 6, 1963. This proposed plan included reference to the continued occupancy by the appellant of premises at 701 Pine Street, listing this property as one of the several properties which might be exempted from acquisition when agreements were entered into between the owners of such properties and the Authority, providing for rehabilitation to meet specific requirements for such situations.
On May 16, 1963, the Authority advised appellant that it had reached a decision in regard to 701 Pine Street, stating, in essence, that it could remain and be rehabilitated for its present use, and that the Authority was currently developing further rehabilitation requirements for the property and would be in further contact with appellant in the near future regarding the execution of a rehabilitation agreement.
On October 5, 1964, the Authority tendered to appellant a rehabilitation agreement which provided, in Paragraph 19, that: "The OWNER agrees that the uses permitted on subject premises will be restricted to functions sponsored by or on behalf of duly elected members of the Boslover Association. The OWNER further agrees that subject premises will not be used, leased or rented to nonmembers of the Association or for meetings, gatherings, parties, dances or functions at which nonmembers will be present."
Prior to receiving this proposed rehabilitation agreement, the appellant had expended some $28,000 in improvements and repairs to its premises at 701 Pine Street, and states that without this approximate $10,000 which it receives in yearly rental, it would be unable to pay for the operating expenses of the premises, as it had done in the past. Boslover agreed to the rehabilitation agreement presented to it by the Authority, with the exception of the aforementioned Paragraph 19.
*538 On February 14, 1966, Boslover instituted an action in mandamus, seeking to require the Authority to enter into the rehabilitation agreement, with the omission of paragraph 19. On March 11, 1966, the Authority filed preliminary objections to the complaint in mandamus in the form of a demurrer, lack of jurisdiction, motion to strike, and a motion for more specific pleading. On May 23, 1966, the court below dismissed appellant's complaint in mandamus. This appeal followed.
Appellant, in its brief, sets out the following Statement of Question Involved: "When a redevelopment authority, by ordinance of City Council was required to, and did, prepare and tender a rehabilitation contract to a property owner, which agreement, contrary to said ordinance, contained an arbitrary and unlawful clause prohibiting certain classes of persons from using said private property for a permitted and lawful use, and where the property owner, upon execution of a lawful rehabilitation contract, will receive certain benefits, and avoid irreparable harm, including condemnation, will mandamus lie to require the redevelopment authority to execute such lawful rehabilitation contract without its arbitrary and unlawful clause?"
As we said in Travis v. Teter, 370 Pa. 326, 330, 87 A. 2d 177 (1952): "Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy: Borough of Easton v. Lehigh Water, 97 Pa. 554, 560; Goodman v. Meade, 162 Pa. Superior Ct. 587, 60 A. 2d 577." (Emphasis in original). Assuming, arguendo, that appellant's contention is correct, that a contract was entered into by the letter of May 16, 1963, we agree with the conclusion reached by the court below that: ". . . said letter creates no `clear legal right' in the plaintiff, nor any `corresponding duty in the defendant,' *539 as the terms of that `contract' were not plainly set forth therein" and that mandamus can never be invoked in a doubtful case. Homan v. Mackey, 295 Pa. 82, 86, 114 A. 897 (1929).
Appellant's position, in essence, is that, in reliance upon certain representations made to it by appellee, it acted to its detriment and is therefore entitled to relief. This may well be, in the proper forum and by a proper cause of action. We hold, only, that the record in this case does not establish a clear, legal right in appellant to have a contract executed by appellee in the form desired by appellant, and mandamus will, therefore, not lie.
Order affirmed.
DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
The Majority Opinion correctly states that the Boslover Ahavas Achim Belzer Association receives some $10,000 per year from rental of its premises, which goes toward the operating expenses of the building, but it fails to add that the moneys collected in dues from the members go toward contributions to such worthy charities as Allied Jewish Appeal, Bonds for Israel, Federation of Jewish Charities, Old-Age Jewish Home, and the Jewish National Fund for Israel.
The Boslover Association is purely a charitable enterprise but it has not been treated very charitably by the Redevelopment Authority of Philadelphia, and no crumbs of sympathy fall from the decision of the Majority for the plight of this Association which for nearly half a century has been a shining light of brotherhood in the City of Brotherly Love. The trouble in this case began when the Redevelopment Authority of Philadelphia prepared an Urban Renewal Plan for what is known as the Washington Square East Urban Renewal Area, Unit No. 3, the area including the Boslover property. On August 22, 1962, the Authority submitted *540 its plan to City Council which approved it through enactment of Ordinance No. 2219, which specifically recognized as one of the uses to be permitted: "The Boslover Beneficial Association at 701 Pine Street." The Ordinance also stated that the premises were to be exempt from condemnation upon the execution of a Rehabilitation Contract with the authority.
On May 16, 1963, the Authority advised the Boslover organization by letter that "this property is compatible with the residential character of the neighborhood and . . . can remain and be rehabilitated for its present use." (Emphasis supplied). In accordance with this communication and after further conferring with the Authority, the Boslover organization expended $28,000 for improvements.
On October 5, 1964, 17 months after the letter of May 16, 1963, and after the completion of the physical improvements agreed upon, the Authority advised Boslover that the Rehabilitation agreement to be finalized between the parties would include a provision, known as Clause 19, that Boslover must not rent its premises to nonmembers or for meetings, gatherings, dances or functions at which nonmembers will be present.
Clause 19 came as a thunderclap in a clear sky to Boslover and its members. Throughout the course of the negotiations, discussions and legislative action by the City Council of Philadelphia, the entire emphasis was on physical rehabilitation of the building. Not even the shadow of a hint obtruded to suggest that the Authority would have, or could have, supervisory powers over how the Boslover building was to be used, except in the manner it had operated theretofore. When City Council, as I have stated, authorized the Boslover building as one of the uses to be permitted, it obviously meant the uses which had been historically associated with the building.
*541 Clause 19 thus arbitrarily offends against the law in the case laid down by City Council. But it goes further. It is capricious in the extreme. For instance, it prohibits members from inviting their wives to functions in the building unless the wives themselves become members. The Authority has no more right to impose such a condition than it would have to demand that men entering the building must be attired in white tie and tails and the women arrayed in low-neck and floor-sweeping gowns.
Clause 19 is so high-handed, arbitrary, and capricious that Boslover would not be permitted to offer a dinner or an award to an astronaut or an ambassador unless he first became a member of the organization. But, apart from the absurdities residing in Clause 19, it invites Authorities from now on to embark on sociological ventures for which they have no authority, training or aptitude. To allow Authorities to stand at the door of those buildings which come within their redevelopment areas and determine who should and should not enter, is to empower them with a tyrannical supervision which, if fully exercised, could change the sociological face of the communities in which they operate.
Clause 19 would practically destroy the Boslover Association because, without its renting prerogatives, it would be deprived of the very sinews which hold it together; without income the building could not be operated, and without a structure within which to perform its functions, Boslover's charitable enterprises would wither and die and thus the whole purpose of the Boslover Association would perish.
The Association remonstrated against Clause 19, but the Authority replied that if Boslover would not accept it the Authority would include the premises in the properties to be condemned. This presented Boslover with virtual annihilation from either quarter. If *542 it accepted Clause 19, it would have no revenue with which to run the building, and if it did not accept, the building would be subject to demolition.
In this state of affairs, Boslover turned, as its only recourse, to the courts. On February 14, 1966, it filed a complaint in mandamus in the Court of Common Pleas of Philadelphia County, requesting that the Authority be compelled to enter into a Rehabilitation agreement with Boslover, without the self-destructive Clause 19 and as provided for by the Urban Renewal Plan. On March 11, 1966, the Authority filed preliminary objections in the form of a demurrer. The court sustained the preliminary objections and dismissed the complaint. The plaintiff appealed.
The court conceded that the Redevelopment Authority is a proper subject for mandamus (Pa. R.C.P. 1094) but held that the writ could issue only to compel the performance of a ministerial act and not one which involved discretion. This is, of course, a correct statement of the law, but the court overlooked the realities of the case. The Authority's discretion was limited to determining whether the property was to be acquired for rehabilitation or exempted from acquisition and a rehabilitation agreement to be entered into between the Authority and the owners. The Authority exercised its discretion by resolving that the property would not be acquired but "can remain and be rehabilitated for its present use." (Emphasis supplied.)
Having exercised this discretion in the manner indicated, the Authority should act in conformity with the scope of that discretionary decision. When it declared that 701 Pine Street was to be exempt from condemnation and Boslover was to accomplish the rehabilitation, Boslover acquired the right to a rehabilitation agreement, and the Authority acknowledged the duty of executing such an agreement. Having notified Boslover on May 16, 1965, that it could remain and its *543 building be rehabilitated for "its present use", the Authority exhausted its discretion. It could not later add the condition that the building was to be operated in a manner different from the manner in which it had theretofore been operated. The Authority's remaining task for accomplishment was to execute the agreement on which there was a concord, and for which there existed a Councilmanic mandate. The Authority could not, after the contractual cement had hardened, smash it open with the sledge hammer of an alleged discretion in a field in which it had no discretion. ". . . [I]f the officer has exercised and has exhausted his discretion, and has thereby decided all the questions which come properly and legally within his discretion in the relator's favor, and has refused to perform the act for a reason neither legally nor properly within the scope of his discretion, the writ (of mandamus) will lie to compel him to do the specific act which his own judgment has shown him he should do, upon the ground that the act remaining to be performed by him is a mere ministerial duty." (34 Am. Jur., Mandamus, § 73, p. 863). In Pearlman v. Pittsburgh, 304 Pa. 24, this Court said: "There is a discretion vested in the board to determine who are and who are not responsible bidders,  a sound discretion to be exercised in a given way, as we shall point out later,  but once it is determined which of the bidders are responsible, discretion ends." (Emphasis supplied)
The court below said that it sympathized with Boslover but that "whatever loss it has suffered or may suffer in the future, is fully compensable by an action at law or equity as and when the proper time arises." The proper time for Boslover to exercise its rights is now. Delay may deplete or irreparably impair those rights. Boslover is being considerably handicapped today in carrying out its functions because of the guillotine blade the Authority has raised above its *544 head. With the threat of legal demise constantly hovering over the premises, the Association cannot enter into long range commitments for the premises, it may not carry out its charitable enterprises with efficiency and dispatch.
The Majority Opinion states that mandamus is an extraordinary remedy which "can never be invoked in a doubtful case." But this is not a "doubtful case."
It is fundamental law that preliminary objections admit the truth of facts well pleaded.[*] The plaintiff averred in section 33 of its complaint: "Since February 15, 1965, Boslover has been advised by the Authority that its Premises would be condemned and that the Authority would not enter into a Rehabilitation Agreement. Boslover's efforts since such date to present, to cause the Authority to reverse its decision to so condemn and to enter into a Rehabilitation Agreement as provided by the said Urban Renewal Plan, have been fruitless."
Thus, it is idle for the Authority to argue, as it does in its brief: "It [Boslover] could have negotiated to try to change Clause 19, or it could have decided to submit to condemnation and to move or to oppose condemnation on the grounds asserted on this appeal, but in a proper proceeding to test the question. It did none of these things."
The Authority, according to the pleadings, closed the door to negotiation. It demanded that Boslover either change the whole purpose of its organization, as specified in its charter rights, or submit to the wrecking ball. This was a coercive power the Legislature never intended to impart to Authorities, nor one which, under the Constitution, we should permit. This Court said in Schwartz v. Urban Redevelopment Authority, *545 411 Pa. 530, 536: "This Court has held that the mushrooming of authorities at all levels of government and the frequent complaints that the agencies arbitrarily or capriciously and unintentionally ignore or violate rights which are ordained or guaranteed by the Federal and State Constitutions and established law make it imperative that a check rein be kept upon them."
That check rein has been expressed elsewhere: "If the law has pointed out how or in what way the discretion shall be exercised, it is obviously not the exercise of the discretion imposed to proceed in any other way. In other words, the discretion which will withstand review by mandamus must be exercised under the law, and not contrary to law. For the discretion in question is not an arbitrary, vague, or fanciful one, but a legal, regular and sound discretion which must be governed by rule and exercised under established principles of law." (34 Am. Jur. Mandamus, pp. 858-859, § 69, 11 Standard Pa. Practice, ch. 46, § 7, p. 235, footnote 15.)
In Garratt v. Philadelphia, 387 Pa. 442, 448, we said: ". . . mandamus will not lie to control an official's discretion or judgment where that official is vested with a discretionary power. However, the discretion is reviewable and reversible where it is arbitrarily or fraudulently exercised or where, as here, it is based upon a mistaken view of the law."
According to City Ordinance No. 2119, Boslover is entitled to use its premises as it had used them prior to the enactment of the ordinance. The insertion of Clause 19 into the rehabilitation agreement added a condition not contemplated in the Authority's plan nor in the ordinance. The Authority, therefore, went beyond its powers to insert it. With Clause 19 omitted, there would remain only the purely ministerial act of signing the agreement.
*546 The Authority pointed to § 1711 of the Urban Redevelopment Law, 35 P.S. § 1701 et seq., as authority for Clause 19, by stating that subsection (9) permits the Authority to exercise "such other continuing controls as may be deemed necessary to effectuate the purposes of this act." But the Authority cited no case which holds that to effect the purpose of the Act, the Authority may proclaim authoritatively that an organization may not use its premises for weddings and bar mitzvahs because of alleged complaints of noises by neighbors who have come into the neighborhood recently. If Boslover has been allowed to rent its halls for wedding celebrations in the past, its continuing use for that purpose cannot become a basis for a Clause 19. A wedding is hardly a quiet affair. The gala event is bound to be celebrated with music, laughter and cheers for the bride. To demand that no audible sounds emanate from a marital jubilee is like demanding that no orange blossoms decorate the bridal veil. Bar mitzvahs also ring with music, speeches and applause for the younster about to turn from the carefree path of childhood onto the broad road of serious and religious dedication to his career. All this is traditional and cannot be changed by a redevelopment authority. Moreover Boslover has asserted, and it has not been denied, that all its functions are conducted with decorum and order, and they terminate no later than midnight; also that the premises are not utilized for social functions during the period from June 1st to October 1st.
Another reason advanced for Clause 19 was that certain persons in the immediate neighborhood objected to the use of the premises by persons of the Negro race and of Puerto Rican ancestry. The Authority cited from § 1711 (9) (b) to the effect that it may include in any deed or lease "such provisions as the Authority may deem desirable to run with the land in order to effectuate the purposes of this act." Certainly *547 the law would strike down any covenant to run with the land which denied the Negroes and Puerto Ricans the right to peaceably assemble in a hall they have legally rented and legally paid for.
The Majority Opinion does not discuss these matters. It contents itself with saying that it is possible the plaintiff may be entitled to relief "in the proper forum and by a proper cause of action." I submit that it has selected the proper forum and it has filed a proper cause of action. I submit that it is unanswerable that the Authority, having decided not to acquire the Boslover property, but to permit it to remain in the enjoyment of its "present use," and having submitted a rehabilitation agreement, has exercised its discretion to the hilt and must, therefore, now perform on that exercised discretion. Its attempt to include in the agreement more than it was authorized to include, was an arbitrary act which should be declared null and void. Our compelling the Authority to execute the contract it must execute in view of its having exhausted its discretion in the matter would be merely compelling the performance of a ministerial act.
I believe the Authority in this case has more important things to do than to tell the owners of property that the walls of their buildings may not ring with the music of wedding marches and the joyous singing of Bar Mitzvahs. I believe also that it is treading on dangerous territory when it says that property owners may not bring the Constitution onto their land as a protector against discrimination because of race or ethnic background.
I dissent.
DISSENTING OPINION BY MR. JUSTICE ROBERTS:
I believe that the majority misunderstands the precise nature of the appellant's claim for relief and hence *548 is mistaken in its conclusion that mandamus does not lie in this case. The appellant did not request the court below to compel the Redevelopment Authority to exercise its discretion in any manner. That discretion, as Mr. Justice MUSMANNO points out, has already been exercised; the enactment of City Council coupled with the prior acts of the Authority leaves no further ambit for discretionary action in the circumstances this case presents. All that remains to be done is for the Authority to express its formal assent to the agreement  drawn by it  with the unauthorized Clause 19[*] deleted.
Accordingly, I dissent.
Mr. Chief Justice BELL joins in this dissenting opinion.
NOTES
[*] Gardner v. Allegheny County, 382 Pa. 88; Narehood v. Pearson, 374 Pa. 299; London v. Kingsley, 368 Pa. 109.
[*] Such a provision is not within the legal mandate conferred by the legislative power on the Authority. The clause which the Authority seeks to include in the rehabilitation agreement does not deal with the rehabilitation of the property; rather the clause represents an attempt to regulate the internal policy of a private association as to the use of its facilities. Such interference with the internal affairs of the association is offensive not only to reason, but also to the legal powers of the Authority.