The Delaware River Port Authority, Petitioner *v.* Richard L. Thornburgh, Governor of the Commonwealth of Pennsylvania et al., Respondents.

344

Argued December 6, 1983, before President Judge
CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR.,
CRAIG, MACPHAIL, DOYLE and BARRY.

*D. Donald Jamieson,* with him, *Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamieson,* for petitioner.

*Michael J. McCaney, Jr.,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for respondents.

OPINION BY JUDGE DOYLE, June 25, 1984:

This matter is before us for consideration of preliminary objections to an action brought in our original jurisdiction by the Delaware River Port Authority seeking an injunction to compel the Commonwealth and the Department of Transportation to construct a proposed limited access highway, commonly referred to as the Casimir Pulaski Expressway (Pulaski Expressway), between the Betsy Ross Bridge and the Roosevelt Boulevard in the City of Philadelphia.

BACKGROUND

The Delaware River Port Authority (Port Authority) was created in 1931 pursuant to an Interstate Compact between the Commonwealth of Pennsylvania and the State of New Jersey. The Compact was first approved by the Commonwealth by the Act of June 12, 1931, P.L. 575, *as amended,* 36 P.S. 3503, and by the State of New Jersey by 1929 N.J. Laws C. 271, N.J. Stat. Ann. 32:3-1 through 32:3-18, and consented to by the U.S. Congress on June 14, 1932, 47 Stat. 308. The Compact was amended in Pennsylvania by the Act of July 18, 1951, P.L. 1010, and the Act of August 10, 1951, P.L. 1206, and consented to by Congress on July 17, 1952, 66 Stat. 738. Most recently, the Compact was amended in Pennsylvania by the Act of June 11, 1963, P.L. 102, which was consented to by Congress on June 13, 1964, 78 Stat. 215.

The Port Authority owns, operates and maintains four toll bridge crossings over the Delaware River between Pennsylvania and New Jersey: The Walt Whitman Bridge, the Benjamin Franklin Bridge, the Commodore Barry Bridge, and the Betsy Ross Bridge. The Betsy Ross Bridge connects Philadelphia with Pennsauken, New Jersey. The Bridge is linked in Philadelphia to Interstate Route #95 and to local streets in the Bridesburg section of the City. The Port Authority contends that construction of the Bridge was part of a broader highway plan which included construction of the Pulaski Expressway. The Port Authority asserts that the viability of the Betsy Ross Bridge depends on an east-west highway connection to the Roosevelt Boulevard and avers that it undertook construction of the Bridge only upon assurances by the Commonwealth and the Department of Transportation that the Pulaski Expressway would be built. The Port Authority alleges that the abandonment of construction plans by the Commonwealth constitutes a breach of those assurances and further amounts to a breach of the terms of the Interstate Compact under which the Port Authority operates.

The Port Authority initiated this suit by petition for review seeking equitable relief in the nature of mandamus against Governor Thornburgh, the Department of Transportation (Department), the Secretary of Transportation, and the General Assembly. The petition sought to compel the respondents to take all steps necessary and proper within their respective powers to effect the construction of the Pulaski Expressway. The defendants filed preliminary objections objecting, *inter alia,* to our jurisdiction and alleging exclusive jurisdiction in the Board of Claims. This Court sustained those objections which contested our jurisdiction and dismissed the suit, reasoning that, as the claim sounded in contract, jurisdiction

lay properly and exclusively with the Board of Claims. *Delaware River Port Authority v. Thornburgh,* 56 Pa. Commonwealth Ct. 459, 425 A.2d 479 (1981). On appeal, the Supreme Court reversed, holding that we had misperceived the scope of the Port Authority's petition for review and the Supreme Court remanded to this Court for consideration on the merits. *Delaware River Port Authority v. Thornburgh,* 500 Pa. 629, 459 A.2d 717 (1983). Our dismissal of the petition was upheld as to the respondent General Assembly on grounds of constitutional separation of powers. *Id.*

On remand, the remaining respondents moved to reinstate their preliminary objections and file supplemental briefs. On May 27, 1983, President Judge CRUMLISH granted the Respondents' motion and directed that the outstanding preliminary objections be listed for argument before the Court *en banc.*

## THE SUPREME COURT REMAND

Initially, we point out that the Supreme Court's remand to us "for consideration of the petition on its merits" does not preclude our consideration of the outstanding preliminary objections presented here. As President Judge CRUMLISH noted in granting Respondents' motion, we previously addressed only those objections relating to the exclusive jurisdiction of the Board of Claims, and we echo his belief that the Supreme Court could not have intended to foreclose the opportunity to have adjudicated objections presented to this Court but not addressed in the previous adjudication.

Justice ROBERTS' opinion for the Supreme Court focused on our error in characterizing the Port Authority's petition as a cause of action sounding solely in contract. He noted those counts in the petition which alleged a duty to construct the Pulaski Expressway arising not from contract or quasi-contractual

assurances, but from the terms of the Interstate Compact itself. Such allegations are not of a sort as fall within the expertise of the Board of Claims. Rather, Justice ROBERTS pointed out, they require statutory interpretation on both a state and federal level, a function more properly within this Court's purview. Consequently, the Supreme Court reversed as premature our refusal of jurisdiction and directed our consideration to the Port Authority's claim under the Compact.

It is clear, however, that we may examine the merits of the Port Authority's interstate compact claim, as directed by the Supreme Court, in the context of a preliminary objection in the nature of a demurrer. If the Compact gives rise to no right to construction of the Pulaski Expressway, then the Port Authority's petition fails to state a cause of action in equity for which we are empowered to grant relief, and a demurrer to claims based on the Compact must be sustained. Collaterally, if our analysis reveals that the Port Authority has no claim under the Compact for the requested relief, then the sole basis of the Port Authority's claim for injunctive relief remains in contract, or in quasi or implied contract and we must again defer to the exclusive jurisdiction of the Board of Claims. *See Smock v. Commonwealth,* 57 Pa. Commonwealth Ct. 67, 425 A.2d 883 (1981); *Children's Rehabilitation Center v. County of Allegheny,* 44 Pa. Commonwealth Ct. 172, 403 A.2d 640 (1979). Our Supreme Court has consistently held and reaffirmed that "the Commonwealth Court may not intervene in contractual disputes involving the Commonwealth by providing injunctive relief against a breach of contract. *Xpress Truck Lines v. Pennsylvania Liquor Control Board,* Pa. , , 469 A.2d 1000, 1004 (1983); *Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982); *see Emergency Medical*

*Services Council, Inc. v. Department of Health,* 499 Pa. 1, 451 A.2d 206 (1982); *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383 (1981). *See also Vespaziani v. Department of Revenue,* 40 Pa. Commonwealth Ct. 54, 396 A.2d 489 (1979).

INTERPRETATION OF THE INTERSTATE COMPACT

The interpretation of an interstate compact presents a question of federal law. *Cuyler v. Adams,* 449 U.S. 433 (1981); *Delaware River Port Authority v. Thornburgh,* 500 Pa. 629, 459 A.2d 717 (1983). The consent of Congress transforms an interstate compact into a law of the United States and no state may order relief inconsistent with its express terms. *Texas v. New Mexico,* U.S. , 103 S.Ct. 2558 (1983). The starting point in every case involving construction of a statute is the statutory language itself. *Bartholemew v. Northampton National Bank of Easton,* 584 F.2d 1288 (3d Cir. 1978).

The Port Authority relies on Article IX of the Compact, 36 P.S. §3503, which provides, in pertinent part:

> The Commonwealth of Pennsylvania and the State of New Jersey hereby covenant and agree with each other and with the holders of any bonds or securities or obligations of the Commission[1] for which there may or shall be pledged the tolls, rents, rates or other revenues, or any part thereof, of any property or facility owned, operated or controlled by the Commission . . .

---

[1] Section 1 of the Act of June 11, 1963, P.L. 102, amending the Compact, provided that the interstate body corporate created by the Compact as The Delaware River Joint Commission should continue under the name The Delaware River Port Authority, which would continue to be referred to in the Compact as the "Commission."

that ... *the Commonwealth and the said State will not diminish or impair the power of the Commission* to own, operate or control said properties and facilities or *to establish, levy or collect tolls, rents, rates or other charges* in connection with such properties or facilities. (Emphasis added.)

The Compact also provides, in part:

Upon its signature on behalf of the State of New Jersey and by the Governor on behalf of the Commonwealth of Pennsylvania, the aforesaid compact or agreement shall be and become binding and shall have the force and effect of a statute of the Commonwealth of Pennsylvania, and The Delaware River Joint Commission shall thereupon become vested with all the powers, rights and privileges, and be subject to the duties and obligations, contained in said compact as though the same were specifically authorized and imposed by statute, *and the Commonwealth of Pennsylvania shall be bound by all of the obligations assumed by it under said compact....* (Emphasis added.)

36 P.S. §3504.

The Port Authority's argument is threefold. First, it is urged that the assurances allegedly received from the Department of Transportation regarding construction of the Pulaski Expressway constitute an enforceable promise to build and should be considered an "obligation assumed under the Compact" to which the Commonwealth has agreed to be bound. Breach of this express or implied promise, it is argued therefore, violates the provisions of 36 P.S. §3504 quoted above. We do not agree. Regardless of whether the facts pleaded by the Port Authority establish the existence of an enforceable contractual or

quasi-contractual promise to build the highway, we do not believe any such promise constitutes an "obligation assumed under the Compact" to which the force of 36 P.S. §3504 should be applied.

We do not read the Commonwealth's express promise to be bound by its obligations under the Compact to encompass *all* obligations which have arisen out of contracts between the Port Authority and the Commonwealth. To read the Compact so broadly would bestow the force and effect of federal law on every contract between the Port Authority and any Commonwealth department or administrative entity. We do not believe this was the intent of our Legislature or of the Congress in approving the Compact. Rather, we believe the language of §3504 reflects a narrow intent to expressly bind the two compacting states to those obligations articulated in the Compact itself. We do not interpret the terms of the Compact to extend the express agreement to be bound to other obligations which subsequently arise out of the Port Authority's capacity to enter into contracts.

And, of course, nowhere expressed in the Compact is an obligation on the part of the Commonwealth to construct the Pulaski Expressway or any other access highway to serve any of the Port Authority's bridges. Consequently, the Port Authority's pleading of the existence of a contract, or an express or implied promise to build the Pulaski Expressway, does not in and of itself plead a violation of the Interstate Compact.

Second, the Port Authority argues that Count Two of its petition for review pleads a violation of the Compact because the failure of the Commonwealth to construct the Pulaski Expressway has resulted in the generation of less than anticipated toll receipts. Consequently, it is pleaded, the Port Authority's ability to meet its own obligations to its

bondholders is adversely affected. Nowhere expressed in the Compact, however, is a commitment by the agreeing states to affirmatively avoid adverse impact on the Port Authority's ability to satisfy its bondholders. Count Two, therefore, while possibly pleading a damage for which the Port Authority has a right to redress, does not, in and of itself, plead a cause of action arising from any breach of the Interstate Compact.

In Count Three of its petition for review, the Port Authority contends that the failure of the Commonwealth to build the Pulaski Expressway violates Article IX of the Compact. One of the obligations which the Commonwealth *has* expressly assumed under the Compact is the commitment, articulated in Article IX, not to "diminish or impair the power of the Commission . . . to establish, levy or collect tolls, rents, rates or other charges. . . ." 36 P.S. §3503. The Port Authority pleads that by abandoning plans to construct the Pulaski Expressway, the Commonwealth has impaired its ability to collect tolls on the Betsy Ross Bridge.

In support of its argument, the Port Authority relies on *Covington & Cincinnati Bridge Company v. Kentucky,* 154 U.S. 204 (1894). That reliance is misplaced. In *Covington,* the States of Ohio and Kentucky entered into an agreement creating a bridge company. Subsequently, the State of Kentucky passed legislation attempting to regulate and reduce the tolls collected by the company, without the consent of the State of Ohio or the Congress. In the instant case, the petition for review does not plead any legislative act by the Commonwealth directed toward the reduction of tolls on the Betsy Ross Bridge. Nor is there alleged any action by the Commonwealth attempting to regulate the tolls collected, affect the Port Authority's authority to collect tolls, or other-

wise interfere with the collection of tolls from the bridge. All that is alleged is that by *inaction* the Commonwealth is responsible for the failure of the bridge to generate revenue at levels which would be anticipated had the Pulaski Expressway been built. The conduct complained of here is thus quite dissimilar to the bold attempt by the State of Kentucky to interfere with the collection of tolls in *Covington*.

We note also that in statutory interpretation we are constrained to construe language according to its common and approved usage by Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903, and the legislature is presumed to have intended its words to be so construed. *Commonwealth Trust Co. of Pittsburgh,* 357 Pa. 349, 54 A.2d 649 (1947); *Crusco v. Insurance Co. of North America,* 292 Pa. Superior Ct. 293, 437 A.2d 52 (1981); see also *Donovan v. Frezzo Brothers,* 678 F.2d 1166 (3d Cir. 1982); *United States v. Allen,* 574 F.2d 435 (8th Cir. 1978). Article IX of the Compact prohibits impairment of the *power* of the Port Authority to establish and collect tolls. Power is defined as "[t]he right, ability or faculty of doing something." Black's Law Dictionary, 1332. Consequently, we interpret Article IX of the Compact to prohibit interference with the authority or capacity of the Port Authority to establish, levy and collect tolls, or to otherwise control the operation of its bridges. The facts pleaded in the Port Authority's petition for review do not establish any such interference. The facts pleaded in the petition for review, if true, establish only that the failure of the Commonwealth to build the Pulaski Expressway has limited the *potential* profitability of the Betsy Ross Bridge. This is not an interference with the setting of toll rates, with the collection of tolls or with the operation of the bridge. It is not a violation of the Interstate Compact.

### Remaining Grounds for Relief

As noted above, this Court lacks jurisdiction to consider matters arising exclusively out of contractual or quasi-contractual claims against the Commonwealth. *Xpress Truck Lines; Ezy Parks; Smock.* We have examined the Port Authority's claims under the Interstate Compact as directed by our Supreme Court and have determined, in a posture of demurrer, that the Port Authority's petition for review states no cognizable claim under the Compact for the relief requested. The Commonwealth's demurrer to those counts in the petition for review alleging violation of the Compact is therefore sustained and those counts are dismissed. The remaining averments in the petition for review claim a right to relief sounding solely in theories of express or implied contract. The expertise and jurisdiction to deal with such claims is *exclusively* in the Board of Claims. *Xpress Truck Lines.* Lacking jurisdiction over the remaining claims, we are compelled, under Section 5103 of the Judicial Code, 42 Pa. C. S. §5103, to transfer the matter to the tribunal which has jurisdiction.

### Order

Now, June 25, 1984, in accordance with the foregoing opinion, Respondents' Preliminary Objections are sustained and the above referenced matter is transferred to the jurisdiction of the Board of Claims. Jurisdiction relinquished.

---

Dissenting Opinion by Judge Rogers:

I respectfully dissent because I believe that the averments of the petition for review that the Commonwealth agreed with the petitioner in writing to construct the Casimir Pulaski Expressway, a necessary access to the petitioner's Betsy Ross Bridge,

that the Betsy Ross Bridge was built in reliance on this promise and that the Commonwealth has failed and refused to build the highway with resulting loss to the petitioner of tolls and other revenues, are sufficient to withstand a demurrer to this suit based on the Commonwealth's additional promises in the Interstate Compact that it would not impair the operation of the petitioner's properties and that it, the Commonwealth, would be bound by all of its obligations under the Compact.