493 A.2d 1351

**The DELAWARE RIVER PORT AUTHORITY, Appellant,**

**v.**

**Richard L. THORNBURGH, Governor of the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania, Department of Transportation and Thomas Larson, Secretary of Transportation of the Commonwealth of Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1985.

Decided June 4, 1985.

12

---

D. Donald Jamieson, Jeffrey Cooper, Philadelphia, for appellant.

Michael J. McCaney, Jr., Deputy Atty. General, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Spanning the Delaware River, from Philadelphia to Pennsauken, a concinnity of steel, stone and river, is the Betsy Ross Bridge, named in honor of a placid seamstress who, story tells, stitched the Stars and Stripes. A limited access highway to the bridge was proposed and named in honor of Casimir Pulaski, a great general of the Revolution, who came from Poland, that free men might build such like bridges. The Pulaski Highway, a main artery from the heart of the Philadelphia area to be served, remains unconstructed and therefore the purpose of the bridge unfulfilled.

· The Delaware River Port Authority (DRPA) and this Commonwealth, who were involved in the conception and construction of the bridge, have fallen into quarrel over the responsibility for the construction of the Pulaski Highway. That ultimate question of responsibility is not before us. What is before us is this: In what form and before what forum should that question be resolved? The question was raised by an action in mandamus brought by DRPA, contending that, by statute and contract, the Commonwealth and the Department of Transportation (PennDOT) are obligated to build the highway, and can be compelled to do so in mandamus. The Commonwealth, on the other hand, contends that, if it is ultimately obliged to build the highway, it

is by contract, for which only damages would follow if it failed to perform. Further, the argument goes, since the claims sound in contract and state no statutory cause of action, the Commonwealth Court lacks jurisdiction and the matter properly lies before the Board of Claims. It is that issue that lies before us now.

The DRPA initiated these proceedings by filing a petition for review addressed to the original jurisdiction of the Commonwealth Court. Named as respondents in that petition (appellees herein) were the Commonwealth Department of Transportation, the Secretary of Transportation, the Governor, and the General Assembly. The petition alleged that the Commonwealth has violated its statutory obligations under the Delaware River Port Authority Compact (Compact)[1] by failing to fulfill a contractual promise to construct the Pulaski Highway to connect with the Pennsylvania approach to the bridge. The DRPA sought a writ of mandamus compelling the Commonwealth to take all necessary and proper steps to effectuate construction of the highway, and an injunction precluding the Commonwealth from hindering said construction, or from disposing of any property previously acquired for the construction of the highway. The DRPA also has pending an action before the Board of Claims seeking contractual damages.

In response to the petition for review, appellees filed preliminary objections alleging, *inter alia,* a lack of subject matter jurisdiction in the Commonwealth Court. That court, determining that the claims sounded in contract, sustained the preliminary objections and found that the Board of Claims had exclusive jurisdiction. *Delaware Riv-*

1. The Delaware River Port Authority Compact (Compact) was agreed upon in 1931 by the Commonwealth of Pennsylvania and the State of New Jersey to effectuate the development of the Delaware River and Port District. The Compact was first approved by the Commonwealth by the Act of June 12, 1931, P.L. 575, *as amended,* 36 P.S. § 3503, and by the State of New Jersey by 1929 N.J. Laws C. 271, N.J.Stat.Ann. 32:3–1 through 32:3–18. The United States Congress gave its consent to the Compact on June 14, 1932, 47 Stat. 308. Moreover, the Compact is to have the full force and effect of a statute of the Commonwealth. *See infra* at 15–18.

*er Port Authority v. Thornburgh,* 56 Pa.Cmwlth. 459, 425 A.2d 479 (1981). On appeal we reversed, and remanded the case to the jurisdiction of the Commonwealth Court for consideration on the merits. *Delaware River Port Authority v. Thornburgh,* 500 Pa. 629, 459 A.2d 717 (1983).[2] We there held, in a unanimous opinion authored by then-Chief Justice Roberts, that the Commonwealth Court had erred in characterizing appellant's claim as solely contractual and in declining to accept jurisdiction over the mandamus action. We further stated that, inasmuch as the petition for review sought to restrain appellees' alleged interference with the performance of DRPA's statutory duties and to enforce appellees' compliance with their statutory duties under interstate compact, the issue was statutory, rather than simply contractual, and thus was cognizable in Commonwealth Court. *Id.,* 500 Pa. at 634, 459 A.2d at 719–20.

On remand the Commonwealth Court reinstated and considered those preliminary objections which it had not previously addressed, and again decided that jurisdiction properly lay in the Board of Claims, determining that the DRPA petition for review failed to state a cognizable claim for the relief requested. *Delaware River Port Authority v. Thornburgh,* 83 Pa.Cmwlth. 343, 479 A.2d 626 (1984). In so holding, that court concluded that no statutory obligations under the Compact were herein implicated, and that the Commonwealth's only remaining obligations, if proven, were contractual in nature. Thus, the matter is now before us for the second time, and arises in the posture of an appeal by DRPA from the Commonwealth Court order sustaining preliminary objections in the nature of a demurrer. We reverse.

■ Jurisdiction over matters arising exclusively out of contractual or quasi-contractual claims against the Com-

---

**2.** We upheld that part of the Commonwealth Court order dismissing the petition as to the respondent General Assembly, on grounds of constitutional separation of powers.

monwealth lies in the Board of Claims.[3] *Xpress Truck Lines, Inc. v. Pennsylvania Liquor Control Board,* 503 Pa. 399, 469 A.2d 1000 (1983); *Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982). On the other hand, where an obligation derives from statute rather than from contract, a petition for review is properly entertained in Commonwealth Court. *Delaware County v. Commonwealth, Department of Public Welfare,* 34 Pa.Cmwlth. 165, 383 A.2d 240 (1978). The question before us is whether the commitments allegedly entered into by the Commonwealth in this matter are of a type that trigger such statutory obligations and duties.

The DRPA alleges that, prior to agreeing with the Commonwealth to construct the Betsy Ross Bridge, it received express assurances from PennDOT concerning the construction of the proposed highway. Further, DRPA alleges that the construction of the bridge was fundamentally based upon, and only undertaken in view of, said assurances. The DRPA also avers that its ability to meet its statutory obligations to its bondholders is being adversely affected by the Commonwealth's failure to construct the Pulaski Highway. Finally, appellant contends that the failure of the Commonwealth to construct the highway impairs its ability to collect tolls on the bridge. This, appellant argues, constitutes a violation of appellees' statutory obligations under Article IX of the Compact, wherein the Commonwealth agrees not to "diminish or impair the power of the Commission... to establish, levy or collect tolls, rents, rates, or other charges..." 36 P.S. § 3503.

Accepting the truth of appellant's factual averments, as we must in deciding whether a demurrer was properly sustained, *Savitz v. Weinstein,* 395 Pa. 173, 149 A.2d 110 (1959); *March v. Banus,* 395 Pa. 629, 151 A.2d 612 (1959), we conclude that statutory as well as contractual obligations are at issue herein.

3. Act of May 20, 1937, P.L. 728, § 4, *as amended,* 72 P.S. § 4651–4 (Supp.1982–83).

A review of the relevant statutory passages reveals the breadth of the Commonwealth's obligations. In addition to agreeing not to diminish or impair DRPA's power to discharge its duties,[4] the Commonwealth has agreed to vest in the DRPA a broad panoply of powers with which to effectuate its purposes and functions. 36 P.S. § 3503, Article IV. Among such powers is that of entering into contracts;[5] the power to borrow money upon bonds or other obligations and to perform its covenants and agreements with the holders of such bonds and obligations;[6] and the authorization to exercise such other powers as are necessary or incidental to the effectuation of its authorized purposes.[7]

Moreover, the General Assembly has provided that the Compact is to have the full force and effect of a statute of the Commonwealth:

> Upon its signature on behalf of the State of New Jersey and by the Governor on behalf of the Commonwealth of Pennsylvania, the aforesaid compact or agreement shall be and become binding and shall have the force and effect of a statute of the Commonwealth of Pennsylvania, and The Delaware River Joint Commission [now DRPA] shall thereupon become vested with all the powers, rights and privileges, and be subject to the duties and obligations, contained in said compact as though the same were specifically authorized and imposed by statute, and the Commonwealth of Pennsylvania shall be bound by all of the obligations assumed by it under said compact...

36 P.S. § 3504.

In concluding that any duties the Commonwealth may have incurred were strictly contractual in nature, rather than statutory, the Commonwealth Court failed to give sufficient consideration to the Commonwealth's pledge, with both the State of New Jersey, and with the holders of bonds, securities, or other obligations of the DRPA, not to

4. Article IX, 36 P.S. § 3503. *See* p. 6, *supra*, and pp. 7–8, *infra*.
5. Article IV (f), 36 P.S. § 3503.
6. Article IV (j), 36 P.S. § 3503.
7. Article IV (n), 36 P.S. § 3503.

diminish or impair the power of that body to discharge its obligations. Article IX of the Compact provides in pertinent part:

> The Commonwealth of Pennsylvania and the State of New Jersey hereby covenant and agree with each other and with the holders of any bonds or securities or obligations of the Commission for which there may or shall be pledged the tolls, rents, rates or other revenues, or any part thereof, of any property or facility owned, operated or controlled by the Commission... that ... the Commonwealth and the said State will not diminish or impair the power of the Commission to own, operate or control said properties and facilities or to establish, levy or collect tolls, rents, rates or other charges in connection with such properties or facilities.

36 P.S. § 3503. In reading Article IX as prohibiting the Commonwealth only from actual interference with DRPA's setting of toll rates, collection of tolls, or operation of the bridge, the Commonwealth Court adopted an overly restrictive view of the Commonwealth's obligations to the DRPA. By operation of 36 P.S. § 3504, the Commonwealth suffused the Compact with the binding force and effect of a statute, and committed itself to be bound by all obligations assumed by it under the Compact. The General Assembly further vested the DRPA with all of the powers, rights and privileges contained in the Compact, as though same were specifically authorized and imposed by statute.

■ The issue before us is whether the commitments allegedly rendered by the Commonwealth in this matter are of a type as will bring into operation such statutory obligations and duties. We find that they are. By authorizing the DRPA to enter into contracts, to incur financial obligations and pledge its tolls or other revenues in security therefor, and by then pledging neither to diminish nor impair the DRPA's power to discharge its obligations, the Commonwealth incurred obligations of a statutory dimension. That pledge, rendered to both the State of New Jersey and to the holders of the DRPA's financial obli-

gations, may not now be made ephemeral by casting the Commonwealth as simply one more contracting party, free like any other to affirm or disaffirm its commitments with only contractual ramifications. By rendering assurances concerning the bridge and highway, by referencing such assurances to the DRPA's bond-marketing function, and finally, by entering into an agreement with the DRPA for the construction of the highway, the Commonwealth, if these claims be proven, has assumed statutory duties to neither diminish nor impair the DRPA's discharge of the above, and no longer retains the discretion to renege on its obligations.

■■■ Appellants seek relief in the nature of mandamus. Mandamus will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law. *Porter v. Bloomsburg State College,* 450 Pa. 375, 301 A.2d 621 (1973); *Valley Forge Racing Association v. State Horse Racing Commission,* 449 Pa. 292, 297 A.2d 823 (1972). Further, this Court has stated that mandamus is proper to compel the performance of legal duties, even where the existence and scope of such duties must be found and defined in the course of the mandamus action itself. *Volunteer Firemen's Relief Association v. Minehart,* 415 Pa. 305, 203 A.2d 476 (1964).

■■■ While mandamus will not ordinarily lie to compel a series of particular acts or conduct, *Russell v. Osser,* 437 Pa. 45, 261 A.2d 307 (1970), or to compel the performance of a particular discretionary act, it is available to direct that discretion be exercised. *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978). As Mr. Justice Musmanno suggested in his dissenting opinion in *Boslover A.A.B. Assn. v. Philadelphia Redevelopment Authority,* 425 Pa. 535, 229 A.2d 906 (1967), there may exist circumstances in which a governmental unit, although vested with discretion, exhausts that discretion by making contractual

commitments, and thereafter retains no discretion to do other than act in conformity with such commitments:

> The Authority could not, after the contractual cement had hardened, smash it open with the sledge hammer of an alleged discretion in a field in which it had no discretion.

425 Pa. at 543, 229 A.2d at 910.[8]

■ Consequently, if PennDOT is ultimately responsible for the construction of the highway, an as yet unresolved question, their discretion to build or not to build is foreclosed. By the operation of the Compact they lose the status of an ordinary contracting party to suffer damages in lieu of performance. This conclusion is consistent with the intent of the General Assembly, since it cannot be that the purpose for which PennDOT and the DRPA were created is either advanced or satisfied by one paying damages to the other for the failure of the performance envisioned in the legislative purpose.

For the reasons outlined above, we find that the requisite legal right, and corresponding duty, are made out by the averments in the instant petition for review. Moreover, it is clear that there exists no adequate alternative legal remedy, other than the relief herein requested, to ensure the Commonwealth's compliance with its statutory obligations. We hold therefore that the Commonwealth's failure to fulfill its contractual promises, if proven, would constitute a violation of its statutory obligations under the Compact, and as such would state a cognizable claim under the Compact for the relief requested. Should appellants prove their averments, we find that relief in the nature of a writ of mandamus lies in this setting to compel the Commonwealth to fulfill its

---

**8.** In a separate dissenting opinion, joined by Mr. Justice Bell, Mr. Justice Roberts articulated a similar view:

> That discretion ... has already been exercised; the enactment ... coupled with the prior acts of the Authority leaves no further ambit for discretionary action ...

*Boslover A.A.B. Assn. v. Philadelphia Redevelopment Authority,* 425 Pa. 535, 548, 229 A.2d 906, 912 (1967).

statutory duty to effectuate the construction of the Pulaski Highway.

Accordingly, the Order of the Commonwealth Court is reversed and the case is remanded to that court for consideration on the merits.[9]

---

**9.** We have reviewed the remaining preliminary objections offered by appellees, and we find them to be without merit.