Charles Sims AFRICA, Petitioner,

v.

Martin HORN; Commissioner, Pennsylvania Department of Corrections; Graterfords' Tuberculosis Clinic, Members of the Program Review Committee at State Correctional Institution at Graterford, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 1997.
Decided Sept. 30, 1997.

No appearance entered for Petitioner.

Mark E. Guzzi, Assistant Counsel, Camp Hill, for Respondents.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The Commissioner of the Pennsylvania Department of Corrections, the Graterfords' Tuberculosis Clinic, and members of the Program Review Committee at the State Correctional Institution at Graterford (collectively, Department) have filed preliminary objections in the nature of a demurrer to the amended petition for review filed by Charles Sims Africa (Africa).

On December 6, 1996, Africa, an inmate at the State Correctional Institution at Graterford, filed pro se a "Petition for Writ of Mandamus," seeking this Court's order directing the Department to release him from the Restricted Housing Unit to the general population of the prison. This Court treated Africa's petition as a petition for review addressed to this Court's original jurisdiction and granted Africa leave to file an amended petition for review.

In the amended petition for review, Africa sets forth following allegations. Since August 30, 1996, Africa has been confined in the Restricted Housing Unit for his refusal to take a tuberculosis screening test (T.B. test). Africa is an adherent of MOVE, allegedly a religious organization. He refused to submit to the T.B. test because the test procedures, involving puncturing his skin with a needle and injecting artificial chemicals into his bloodstream, are against the tenets of MOVE which embraces natural law and the teachings of John Africa. While confined in the Restricted Housing Unit, he has been denied contact visits, full exercise periods except one hour per day, access to library books, commissary privileges, adequate heat, showers and proper ventilation. Africa subsequently agreed to submit to a chest x-ray and a sputum test on September 16, 1996, which showed that he had not been infected with tuberculosis. However, the Department continues to confine him in the Restricted Housing Unit for his refusal to submit to a T.B. test.

Africa asserts that the Department's actions violate his right to practice his religion under the Religious Freedom Restoration Act of 1993 (Religious Freedom Restoration Act), 42 U.S.C. §§ 2000bb—2000bb–4, and his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The Department has filed the preliminary objections, contending that Africa's amended petition for review should be dismissed for his failure to state a valid cause of action in mandamus.

In ruling on the preliminary objections in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Wurth v. City of Philadelphia*, 136 Pa.Cmwlth. 629, 584 A.2d 403 (1990). A demurrer must be sustained where it is clear and free from doubt that the law will not permit recovery under the alleged facts. *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992).

The Department contends that MOVE is not a "religion" under the Free Exercise Clause of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, and that Africa's alleged religious beliefs are, therefore, not constitutionally protected. The Department urges this Court to "adopt" the decision of the United States Court of Appeals for the Third Circuit in *Africa v. Commonwealth*, 662 F.2d 1025 (3rd Cir.1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982), which considered the issue of whether MOVE is a "religion" within the purview of the First Amendment.[1]

In *Africa*, Frank Africa, an adherent of MOVE, filed the action under 42 U.S.C. § 1983, seeking an injunction requiring the officials of the state correctional institution to provide him a special diet consisting entirely of raw foods, as required by the alleged tenets of MOVE. After examining the evi-

---

1. To support his allegation that submitting to a T.B. test is against his "religious" belief, Africa attached to the amended petition for review the stipulation that MOVE is a religion within the meaning of the First Amendment, which was submitted in 1986 to the United States District Court for the Eastern District of Pennsylvania in the unrelated action. However, neither Africa nor the Department was a party in that action. Therefore, the attached stipulation is not binding in this matter.

dence presented at the hearing, the Court held that MOVE is not a religion within the purview of the First Amendment. The Court stated:

> We conclude first, that to the extent MOVE deals with 'ultimate' ideas, a proposition in itself subject to serious doubt, it is concerned with secular matters and not with religious principles; second, that MOVE cannot lay claim to be a comprehensive, multi-faceted theology; and third, that MOVE lacks the defining structural characteristics of a traditional religion. The 'new set of ideas or beliefs' presented by Africa does not appear to us to 'confront [t]he same concerns, or serv[e] the same purposes, as unquestioned and accepted 'religions,' . . . . We hold, therefore, that MOVE, at least as described by Africa, is not a religion for purposes of religion clauses. We do not conclude that Africa's sincerely-held beliefs are false, misguided, or unacceptable, but only that those beliefs as described in the record before us, are not 'religious,' as the law has defined that term.

*Id.* at 1036 (citation omitted.)

In this matter, Africa bases the claim of the right to practice his religion on the same allegation that MOVE is a religion which embraces natural law and the teachings of John Africa. However, it is not necessary to address the issue of whether MOVE is a religion because even assuming that Africa's beliefs are "religious" for the purpose of deciding the preliminary objections, Africa still failed to state a valid cause of action in mandamus.

A writ of mandamus sought by Africa is an extraordinary remedy which compels official performance of a ministerial act or mandatory duty, as opposed to a discretionary act. *Pennsylvania Dental Ass'n v. Insurance Department,* 512 Pa. 217, 516 A.2d 647 (1986). The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure. *Hamm v. Board of Education for School District of Philadelphia,* 79 Pa. Cmwlth. 547, 470 A.2d 189 (1984). A writ of mandamus may be issued, only where there is a clear legal right in the plaintiff, a corre-

sponding duty in the defendant, and lack of any other appropriate and adequate remedy. *Delaware River Port Authority v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351 (1985).

Africa alleges that in requiring him to submit to the T.B. test, the Department failed to use the least restrictive means of furthering a compelling state interest in violation of the Religious Freedom Restoration Act. The Act was enacted in 1993 to restore the "compelling interest" test previously abandoned by the Supreme Court in *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The Act prohibited a government from substantially burdening one's exercise of religion, unless the government can demonstrate that the burden (1) is in furtherance of a compelling governmental interest, and (2) is the less restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1; *Commonwealth v. Stewart,* 547 Pa. 277, 690 A.2d 195 (1997).

In *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the United States Supreme Court has recently held the Religious Freedom Restoration Act unconstitutional on the basis that Congress, in enacting the Act, exceeded its enforcement power granted under Section 5 of the Fourteenth Amendment. Consequently, the compelling interest standards set forth in the Religious Freedom Restoration Act are no longer applicable to the inmate's claim of a constitutional right to practice a religion.

Before the enactment of the Religious Freedom Restoration Act, the Supreme Court applied the "reasonableness" test to the claims brought by prisoners under the Free Exercise Cause of the First Amendment, i.e., whether regulations in question burdening prisoners' free exercise of their religion are reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

Under the reasonableness test, the courts may not substitute their judgment on "difficult and sensitive matters of institutional administration, . . . for the determination of those charged with the formidable task of

running a prison." *Id.* at 353, 107 S.Ct. at 2407 (quoting *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984)). The prison officials are accorded wide-ranging discretion and deference in the adoption and execution of policies and practices to maintain internal order and security. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Consequently, the prisoners' religious rights guaranteed under the federal or state Constitution may be curtailed whenever the prison officials reasonably conclude that the exercise of those rights is likely to disrupt the order or stability of the prison or the legitimate penological objectives. *Maute v. Frank,* 670 A.2d 737 (Pa.Cmwlth.1996).

In *Maute,* the inmate at the state correctional institution filed a mandamus action, alleging that the prison officials denied his right to practice a religion by denying access to certain articles necessary to practice his Native American religion. This Court sustained the Department's demurrer to the petition for review, concluding that the inmate failed to show a clear right to have the requested articles or an absolute duty of the prison officials to provide them. The Court reasoned that "[t]he mere fact that whether religious articles are permitted is balanced against the need for orderly administration of the prison makes it a discretionary act and not a ministerial one, making mandamus not maintainable." *Id.* at 740.

■ In this matter, Africa does not dispute that the prison policies for testing its inmates for tuberculosis is reasonably related to the state's interests in preventing the disease from spreading among the prison population and that his right to practice his religion must be balanced against such legitimate interests.

■ As long as the prison policies are reasonably related to the legitimate interests, the prison officials do not have to disprove the availability of an alternative method which will accommodate the prisoner's practice of his or her religion. As the United States Supreme Court stated, "[t]hough the availability of accommodations is relevant to the reasonableness inquiry, we have rejected the notion that 'prison officials ... have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.'" *O'Lone,* 482 U.S. at 350, 107 S.Ct. at 2405 (quoting *Turner v. Safley,* 482 U.S. 78, 90–91, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987)).

Rather, the prison officials are given the discretion to determine whether any alternative methods would be consistent with the orderly administration of the prison. *Maute.* Since the relief sought in this matter involves the prison officials' discretionary act as in *Maute,* Africa failed to establish that he has a clear legal right to the requested relief and that the prison officials have a corresponding duty.[2]

Further, Africa has other adequate remedy for the alleged violations of his constitutional rights under the First and Eighth Amendments. For example, Africa may seek damages, or declaratory, injunctive or other appropriate relief in an action filed in a state or federal court under 42 U.S.C. § 1983, alleging that the prison officials denied his constitutional rights under the color of state law. *International Prisoners' Union v. Rizzo,* 356 F.Supp. 806 (E.D.Pa.1973).

---

**2.** Africa cites *Jolly v. Coughlin,* 76 F.3d 468 (2nd Cir.1996), for the proposition that prison officials may not keep an asymptomatic inmate locked in confinement indefinitely for refusing to take a T.B. test. In *Jolly,* the inmate refused to submit to a purified protein derivative (PPD) test to be administered to determine if he had been infected with the bacteria that causes tuberculosis. The inmate claimed that accepting artificial substances into his body violated the tenets of his religion of Rastafarianism. The United States Court of Appeals for the Second Circuit concluded that the district court did not abuse its discretion in granting the preliminary injunction in favor of the inmate.

Africa's reliance on *Jolly* is misplaced. *Jolly* was decided under the compelling interest standards set forth in the Religious Freedom Restoration Act, which has since been held unconstitutional. Moreover, the ultimate issue in *Jolly* was whether the trial court abused its discretion in granting the preliminary injunction. By contrast, the instant matter concerns the issue of whether Africa stated a valid cause of action in mandamus, to which the different standards are applicable.

We conclude, therefore, that Africa failed to state a valid cause of action in mandamus. Accordingly, the Department's preliminary objections in the nature of a demurrer are sustained, and the amended petition for review is dismissed.

### ORDER

AND NOW, this 30th day of September, 1997, the preliminary objections in the nature of a demurrer to the amended petition for review filed by Charles Sims Africa are sustained, and the amended petition for review is dismissed.