**PENNSYLVANIA DIVISION, HORSE-MEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, INC., Plaintiff**

v.

**MOUNTAINVIEW THOROUGHBRED RACING ASSOCIATION, INC. and Pennsylvania National Turf Club, Inc. a/k/a Penn National Race Track, Defendants**

v.

**State Horse Racing Commission and Pennsylvania Horse Breeders Association, Additional Defendants.**

Commonwealth Court of Pennsylvania.

Argued March 30, 2004.

Decided Aug. 11, 2004.

---

No appearance entered on behalf of plaintiff.

Raymond A. Quaglia, Philadelphia, for defendant, Mountainview Thoroughbred Racing Assoc., Inc.

Richard D. Sherman, Harrisburg, for defendant, State Horse Racing Commission.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The State Horse Racing Commission (Horse Racing Commission) and the Pennsylvania Horse Breeders Association (Horse Breeders Association) have raised preliminary objections to the third-party complaint filed against them by Mountainview Thoroughbred Racing Association (Mountainview) and the Pennsylvania National Turf Club, Inc. (Turf Club), which together operate the Penn National Race Course. The Pennsylvania Division, Horsemen's Benevolent and Protective Association (Horsemen's Benevolent Association), which is the representative of the horse owners and trainers racing at Penn National Race Course, filed an action against Mountainview and the Turf Club alleging that they had no authority to adjust a horsemen's purse account to reflect certain monies that Mountainview and the Turf Club advanced for purses for particular races.[1]

Mountainview and the Turf Club filed their third-party complaint against the Horse Racing Commission and the Horse Breeders Association asserting that if Mountainview and the Turf Club were liable to the Horsemen's Benevolent Association then they should be entitled to a credit for that amount from the Pennsylvania Breeding Fund (Breeding Fund), which is a restricted account established in the State Racing Fund in part to provide money for purses for races restricting or preferring entry to Pennsylvania-bred horses. The Horse Racing Commission's preliminary objections raise the defense of sovereign immunity and also interpose a demurrer, asserting that it owes no duty to Mountainview and the Turf Club with respect to payment of the money at issue and that the dispute involves no money in the State Racing Fund or the Breeding Fund. The Horse Breeders Association similarly asserts a failure to state a claim upon which relief may be granted because there is no contractual privity or legal duty running from it to Mountainview and the Turf Club and, in the alternative, asserts that it is entitled to immunity as an arm of the state.

I

The Race Horse Industry Reform Act (Act), Act of December 17, 1981, P.L. 435,

1. The Horsemen's Benevolent Association filed its complaint in the Court of Common Pleas of Dauphin County, asserting a claim of breach of the "Live Racing Agreement" between it and Mountainview and the Turf Club. Their answer clarified that the name of the facility they operate is Penn National Race Course. Mountainview and the Turf Club filed their third-party complaint in the Court of Common Pleas, and the matter was then transferred to this Court.

as amended, 4 P.S. §§ 325.101–325.402, established the Horse Racing Commission within the Department of Agriculture; it has jurisdiction over all pari-mutuel thoroughbred horse racing activities in the State and over corporations engaged in thoroughbred horse racing. Section 201 of the Act, 4 P.S. § 325.201. The Act provides for licensing of corporations conducting horse race meetings with pari-mutuel wagering, Section 209, 4 P.S. § 325.209, and it directs the manner in which licensed horse racing corporations shall distribute and retain the proceeds of pari-mutuel wagering pools. Section 221, 4 P.S. § 325.221.

The Act creates the State Racing Fund, and each licensed corporation pays a tax through the Department of Revenue to that fund based on a percentage of the amount wagered each racing day. Section 222, 4 P.S. § 325.222. The taxes are used to pay employee salaries for the Horse Racing Commission and the Department of Agriculture related to services under the Act; for Agriculture Secretary and Department expenses in administering the Act; and for all other expenses incurred by the Horse Racing Commission. Monies left over are paid in designated sums to the Breeding Fund, which was created as a restricted account administered by the Horse Racing Commission to enhance purses and awards for registered Pennsylvania-bred thoroughbred horses under specific formulas. See Section 222(b)(5), 4 P.S. § 325.222(b)(5); Section 223(a)–(d), 4 P.S. § 325.223(a)–(d). The Horse Racing Commission may contract with the Horse Breeders Association as the sole body to handle registration and records of such horses. Section 223(g), 4 P.S. § 325.223(g).

Former Section 221(d) of the Act, repealed by Section 18(2) of the Act of May 24, 2000, P.L. 106, formerly 4 P.S.

§ 325.221(d), provided for the collection of funds and their allocation by licensed corporations as follows:

[A]n amount equivalent to 0.33% of the amount wagered each racing day at each corporation conducting a licensed thoroughbred horse race meeting is to be used by that corporation, in combination with the moneys assigned it under section 223(c) and (d), for purses for races restricting or preferring entry to registered Pennsylvania-bred thoroughbred horses as described therein. This equivalent amount is to be considered part of any distribution agreement between individual corporations licensed to conduct thoroughbred horse race meetings and horsemen racing at said meetings of those moneys described in section 222(c).

Before amendment in 2000, Section 222(b), 4 P.S. § 325.222(b), provided for contributions from the State Racing Fund to the Breeding Fund as follows:

(5) From remaining moneys in the State Racing Fund [after specified distributions in paragraphs (1)–(4)]:

(i) An amount equivalent to seven-tenths of one percent of the amount wagered each racing day at thoroughbred horse race meetings shall be paid by the Horse Racing Commission from the State Racing Fund through the Department of Revenue for credit to the Pennsylvania Breeding Fund, beginning on July 1, 1983.

The Act of May 24, 2000, P.L. 106, changed this funding scheme effective July 1, 2000 by repealing the requirement for licensed corporations to use 0.33 percent of the amount wagered each day for purses for restricted races and at the same time amending Section 222(b)(5)(i) so that it now requires the Horse Racing Commission to pay from the State Racing Fund to the Breeding Fund "[a]n amount equiva-

lent to one percent of the amount wagered each racing day at thoroughbred horse racing meetings" for this purpose.

The present dispute arises from the change in the method of funding. The Horsemen's Benevolent Association's complaint in effect asserts that after July 1, 2000 Mountainview and the Turf Club had no authority to allocate any of the 0.33 percent monies that it had collected as of June 30, 2000 to enhanced purses for restricted races, and its request for judgment in that amount in essence claimed that amounts collected as of June 30, 2000 and not yet paid out for enhanced purses should have remained in the horsemen's purse account.

Mountainview and the Turf Club assert in their third-party complaint that they have never borne, whether under the Act or otherwise, ultimate financial responsibility for purses for restricted races. Third–Party Complaint, ¶ 10. They allege that they typically advanced the money to pay the purses at the Penn National Race Course for restricted races and applied thereafter for appropriate reimbursement from the Breeding Fund. *Id.*, ¶ 11. Before July 1, 2000, their practice was to receive in full from the Breeding Fund the 0.7 percent monies (under Section 222(b)(5)(i)) for the calendar year and thereafter to apply the accumulated 0.33 percent monies (under Section 221(d)) for the year to cover any shortfall between the amount advanced and the amount received from the Breeding Fund. *Id.*, ¶ 12. In their New Matter attached to their Answer to the complaint against them, Mountainview and

the Turf Club allege that as of July 1, 2000 the horsemen's purse account at Penn National Race Course contained approximately $171,603.19 in designated 0.33 percent monies that had been accumulated through June 30, 2000 but not yet used as required by the Act. New Matter, ¶ 11.

After July 1, 2000, Mountainview and the Turf Club continued to advance the money for the purses for restricted races and then applied for reimbursement from the Breeding Fund; at some point the Breeding Fund stopped paying reimbursements for sums advanced during 2000. Third–Party Complaint, ¶ 14. Upon inquiry, they were informed by the Executive Secretary of the Horse Breeders Association that they had been paid their full allotment of 0.7 percent monies and one percent monies for 2000 and that any shortfall must be covered by the accumulated 0.33 percent monies in the horsemen's purse account, and Mountainview and the Turf Club duly adjusted the horsemen's purse account. *Id.*, ¶ 15.[2] If the Executive Secretary was not correct and they were not entitled to make that adjustment, then the Horse Racing Commission and/or the Horse Breeders Association must provide a corresponding credit from the Breeding Fund. *Id.*, ¶ 21.

## II

 The Court turns first to the demurrers properly pleaded by the Horse Racing Commission and the Horse Breeders Association by way of preliminary objection.[3] On its demurrer, the Horse Rac-

---

2. The Horsemen's Benevolent Association Complaint, ¶ 13, alleges that during the week of January 21, 2002 Mountainview and the Turf Club delivered a Revised Daily Management Report for the year ended December 31, 2001, which reflected a $171,603.19 Breeders Fund adjustment that was charged to the horsemen's purse account. The Answer ad-

mitted these averments and added by way of further answer that the money was 0.33 percent money that Mountainview and the Turf Club were required to use, and properly did use, for purses for restricted races. Answer, ¶ 13.

3. The practice and procedure in original jurisdiction matters in this Court shall be in

ing Commission argues that the question involved in the suit by the Horsemen's Benevolent Association against Mountainview and the Turf Club is whether the 0.33 percent monies that were accumulated as of July 1, 2000 remained available for use in accordance with the purpose of the statute or whether those monies reverted to the Horsemen's Benevolent Association, never to be used for the purpose for which they were collected. The Horse Racing Commission contends that the answer to this question does not involve it in any way or require its participation. First, the Horse Racing Commission has no duty toward Mountainview and the Turf Club in regard to payment of funds from the 0.33 percent monies. The Act did not provide for the Horse Racing Commission to collect or to disburse the 0.33 percent monies.

Further, the Act does not provide a mechanism for crediting a licensed corporation against payments of taxes in the future. The 0.33 percent monies never were part of the Breeding Fund. As specified in former Section 221(d) of the Act, the 0.33 percent monies were part of the Live Racing Agreement between the Horsemen's Benevolent Association and Mountainview and the Turf Club; the 0.33 percent monies were not State monies and the Horse Racing Commission had no control over their disbursement. As a creature of statute, the Horse Racing Commission has only those powers expressly

conferred upon it by the legislature or that arise by necessary implication, *see* *Vertis Group, Inc. v. Pennsylvania Public Utility Commission,* 840 A.2d 390 (Pa. Cmwlth.2003), and nothing in the Act gave the Horse Racing Commission control over the 0.33 percent monies or authorized the credits sought by Mountainview and the Turf Club.

The Horse Breeders Association argues that the third-party complaint states no theory of liability upon which a claim against it is based. Although Mountainview and the Turf Club sought advice from the Executive Director of the Horse Breeders Association with regard to a bookkeeping method concerning the 0.33 percent monies, those monies were never paid into the Breeding Fund. The complaint does not allege that they reasonably relied upon the advice from the Executive Director or that the Horse Breeders Association was a party to the Live Racing Agreement.

Mountainview and the Turf Club respond that it is impossible for Breeding Fund prizes and purses to be paid timely to qualifying breeders and owners directly from the Breeding Fund. Therefore, licensed corporations are required to advance the necessary funds and then to apply for reimbursement by 58 Pa.Code § 163.538(a), which they quote with supplied emphasis:

accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied. Pa. R.A.P. 106. Pursuant to Pa. R.C.P. No. 1028, preliminary objections may be filed by any party to any pleading and are limited to certain enumerated matters, including (a)(4) "legal insufficiency of a pleading (demurrer)[.]" Under Pa. R.C.P. No. 1030(a), affirmative defenses, including immunity from suit, should be pleaded in a responsive pleading under the heading "New Matter." When ruling on preliminary objections in the

nature of a demurrer, the Court must accept as true all well-pleaded allegations of material fact and all inferences reasonably deduced therefrom, but the Court is not required to accept conclusions of law or expressions of opinion. *Russell v. Donnelly,* 827 A.2d 535 (Pa.Cmwlth.2003). Because a demurrer results in the dismissal of a suit, it should be sustained only in cases that are clear and free from doubt and only when it appears with certainty that the law permits no recovery under the allegations pleaded. *Id.*

A prize awarded under this section shall be in accordance with the standards for purses at each racing meet as approved by order of the Commission. *Each prize shall be advanced to the Horsemen's Bookkeeper Account as won or earned at each meet by the racing association conducting the meet.* The racing association shall maintain a separate ledger of them and shall transmit a certified copy of allowances, prizes and purses made no later than every 10th day of each month of the meets to the Commission. After the Commission has reviewed and approved them, *it shall reimburse the racing association for the advances made* which the Commission finds proper.

Mountainview and the Turf Club refer to an attached affidavit of the Vice President and General Manager of Penn National Race Course for allegations concerning the course of dealing between Mountainview and the Turf Club and the Horse Breeders Association. They assert that the Executive Secretary of the Horse Breeders Association allocates a specific sum at the beginning of the year to be used to cover percentage bonuses and Breeding Fund race purses, with the goal that the Breeding Fund payouts during the year will equal the amount allocated, noting that before 2001 the annual allocations also accounted for the statutory 0.33 percent monies. Since July 1, 2000, the Breeding Fund has reimbursed Mountainview and the Turf Club in full for any advances in excess of their allocation; they have never been "left holding the bag" for any amount of Breeding Fund advances.

Mountainveiw and the Turf Club argue that, if they are held liable to the Horsemen's Benevolent Association, a corresponding credit from the Breeding Fund will amount to payment of funds that have been earmarked and appropriated for that purpose by statute, similar to the situation in *City of Philadelphia v. Shapp*, 44 Pa. Cmwlth. 303, 403 A.2d 1043 (1979) (overruling the State's preliminary objections to the City's mandamus action to compel the State to expend money appropriated for highway repairs and to reimburse the City the cost of highway repairs that the State was required to make by statute). The theory of the third-party complaint is that Mountainview and the Turf Club will be liable if it is held that they did not properly use the 0.33 percent monies after July 1, 2000. If that is the case, they assert, it will be irrelevant that the Horse Racing Commission owed no duty to them regarding payment of the 0.33 percent monies or that those monies were not State monies controlled by the Horse Racing Commission. It will matter only that they have made unreimbursed advances to pay Breeding Fund prizes and purses, which they contend the Breeding Fund must cover.

■ The Court concludes that the demurrers filed by the Horse Racing Commission and the Horse Breeders Association must be sustained. The statutory provisions are plain that the 0.33 percent monies accumulated under former Section 221(d) of the Act never were a part of the State Racing Fund or the Breeding Fund. Mountainview and the Turf Club were required to collect that money and to apply it for the statutory purpose of purses for restricted races, but as they acknowledge that part of their expenditure was not reimbursed. Whether the dispute described in the complaint by the Horsemen's Benevolent Association is characterized as a contract matter or a question of enforcement of statutory duties, it does not involve money that was ever under the control of the Breeding Fund.

In the absence of some clear statutory provision, the Court cannot agree that the

Horse Racing Commission or the Breeders Association may be forced to provide a credit from the Breeding Fund relating to the disposition of monies that were not derived from that fund. Although 58 Pa. Code § 163.538(a) requires Mountainview and the Turf Club to advance monies for specified prizes and purses, it does not guarantee that the Horse Racing Commission will reimburse for all advances whatsoever. Rather, the regulation expressly limits reimbursement to the advances that the Horse Racing Commission finds to be proper. Because Mountainview and the Turf Club have failed to state a claim upon which the Horse Racing Commission or the Horse Breeders Association can afford relief, the third-party action must be dismissed. *Russell v. Donnelly*, 827 A.2d 535 (Pa.Cmwlth.2003). In view of this conclusion, the Court need not address the claims that the action is barred by sovereign immunity.

## ORDER

AND NOW, this 11th day of August, 2004, the preliminary objections of the State Horse Racing Commission and the Pennsylvania Horse Breeders Association in the nature of a demurrer are sustained, and the third-party complaint filed against them by Mountainview Thoroughbred Racing Association and Pennsylvania National Turf Club, Inc. is dismissed.

In view of the dismissal of the Commonwealth parties from the action, the matter is transferred to the Court of Common Pleas of Dauphin County.