**VICTORIA GARDENS CONDOMINIUM ASSOCIATION,** Appellant

v.

KENNETT TOWNSHIP OF CHESTER COUNTY, Allan Falcoff, Mike Elling, Robert Hammaker, Herron Hill Properties, LLC, Victoria Gardens, L.P., a Pennsylvania limited partnership, by its General Partner, Longwood Crossing Properties, LLC and Yorktown Properties, LLC.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 2010.
Decided Jan. 21, 2011.
Publication Ordered April 21, 2011.

Michael J. Clement, Blue Bell, for appellant.

John J. Mahoney and Eric M. Brown, Chester Springs, for appellees.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Victoria Gardens Condominium Association (Association) appeals the order of the Court of Common Pleas of Chester County (trial court) sustaining the preliminary objections of Kennett Township of Chester County [1], Allan Falcoff, Mike Elling and Robert Hammaker (collectively, "Township

---

1. Kennett Township is a Second Class Township. *See* 119 The Pennsylvania Manual 6– 119 (2009).

Defendants")[2], and dismissing Counts I and V of the Association's Complaint.[3] We affirm.

The Association is a condominium association composed of unit owners in the Victoria Gardens development in the Township. Victoria Gardens, L.P. (hereinafter, "Developer"), is the record owner of the streets, clubhouse, common areas and certain common elements in the development. On July 26, 2001, the Township approved subdivision plans submitted by Developer for the development pursuant to the provisions of the Township's Subdivision and Land Development Ordinance (Ordinance).[4]

On August 7, 2001, Developer and the Township executed a Road and Improvement Construction Agreement (Construction Agreement) under which Developer agreed to complete construction of the roads and improvements in the development in three phases. In Phase I of construction, Developer agreed to complete construction of the roads within three years. In Phase II, Developer agreed to complete construction of the public improvements, facilities and common amenities within three years. In Phase III of construction, Developer agreed to complete construction of the control measures relating to soil erosion and sedimentation within three years. The Association was not a party to the Construction Agreement.

The Construction Agreement also provided for financial security with respect to the construction in the development as a condition precedent to the agreement. The security was set at 110% of the cost of the construction in Phases I and II, was to be posted with a bank, and could take the form of an irrevocable letter of credit. Once the Phase I and II work was reduced to an amount equal to 110% of the cost of Phase III, no further reduction in the escrow was permitted until the Phase III work commenced. The agreement also provided that, should Developer fail to complete the construction within three years, the amount of security would be automatically increased to the higher of either 10% for each additional year, or an amount 110% of the cost of· completing construction. In addition, if Developer did not automatically increase the security at the end of the three year period, Developer was in default and the Township could revoke all building permits and refuse to grant new permits. Further, if Developer failed to complete construction, the Township could withdraw the funds necessary for completion, and Developer would reimburse the Township for any funds in ex-

---

**2.** Messrs. Falcoff, Elling, and Hammaker are members of the Kennett Township Board of Supervisors.

**3.** The Association asserted claims against Herron Hill Properties, LLC, Victoria Gardens, L.P., a Pennsylvania limited partnership, by its General Partner, Longwood Crossing Properties, LLC, and Yorktown Properties, LLC in Counts II, III, IV, VI, VII, VIII and IX of its Complaint. On June 30, 2009, default judgments were entered in favor of the Association and against those defendants, and those default judgments are not part of the instant appeal.

**4.** Section 301.1(b) of the Township's Ordinance provides:

b. No lot in a subdivision may be sold, no permit to erect, alter or repair any building upon land in a subdivision or land development may be issued, and no building may be erected in a subdivision or land development, unless or until a subdivision or land development plan has been approved and recorded, and until the required improvements in connection therewith have either been constructed or the completion thereof has been assured by means of a proper completion guarantee as required hereinafter.

Reproduced Record (RR) at 178a.

cess of the escrow funds that were needed for completion.[5],[6]

5. In this regard, Section 309.1 of the Township's Ordinance provides, in pertinent part:

> 309.1: Applicant shall provide for the deposit with the Township of financial security in an amount sufficient to cover the costs of any improvements or common amenities.... Such bond or other security shall provide for and secure to the public the completion of any improvements which may be required within one (1) year of the date fixed in the subdivision plat for completion of such improvements. The amount of financial security shall be equal to one hundred ten (110) percent of the cost of the required improvements for which financial security is to be posted.... If the Applicant requires more than one (1) year from the date of posting of the financial security to complete the required improvements, the amount of financial security may be increased by an additional ten (10) percent for each one (1) year period beyond the first anniversary date from posting of financial security or to an amount not exceeding one hundred ten (110) percent of the cost of completing the required improvements....
> In the case where development is projected over a period of years, the Board of Supervisors may authorize submission of final plats by section or stages of development subject to such requirements or guarantees as to improvements in future sections or stages of development as it finds essential for the protection of any finally approved section of development.

RR at 179a–180a.

> In addition, Section 404.9(b) of the Ordinance provides:
> b. Final approval of subsequent stages of development shall be contingent upon:
> 1. Completion of all improvements associated with the preceding stage or stages.
> 2. Completion of not less than twenty-five (25) percent of the dwellings within the preceding stages.

RR at 181a.

6. Likewise, Section 509(f) and (h) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10509(f), (h) provides, in pertinent part:

> (f) The amount of financial security to be posted for the completion of the required improvements shall be equal to 110% of the cost of completion estimated as of 90 days following the date scheduled for completion by the developer. Annually, the municipality may adjust the amount of the financial security by comparing the actual cost of the improvements which have been completed and the estimated cost for the completion of the remaining improvements as of the expiration of the 90th day after either the original date scheduled for completion or a rescheduled date of completion. Subsequent to said adjustment, the municipality may require the developer to post additional security in order to assure that the financial security equals said 110%....

\* \* \*

> (h) If the party posting the financial security requires more than one year from the date of posting of the financial security to complete the required improvements, the amount of financial security may be increased by an additional 10% for each one-year period beyond the first anniversary date from posting of financial security or to an amount not exceeding 110% of the cost of completing the required improvements as reestablished on or about the expiration of the preceding one-year period by using the above bidding procedure.

Section 511 of the MPC also provides, in pertinent part:

> In the event that any improvements which may be required have not been installed as provided in the subdivision and land development ordinance or in accord with the approved final plat the governing body of the municipality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies. If proceeds of such bond, or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the governing body of the municipality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements....

53 P.S. § 10511.

In light of the Construction Agreement, on August 7, 2001, Developer and the

Township also entered into a Road and Improvement Construction Irrevocable Letter of Credit Agreement (Letter of Credit Agreement) with First Financial Bank (Bank). Under the Letter of Credit Agreement, a letter of credit[7] drawn on the Bank was issued in the amount of $1,745,392.00, which represented 110% of the cost of completing Phases I and II of the construction. Again, the Association was not a party to the Letter of Credit Agreement.

Starting in 2004, the Association repeatedly notified Developer and the Township that the improvements in the development were not completed or were severely deteriorating. In addition, Developer failed to furnish additional security as required by the Construction Agreement. Developer advised the Township and the Association that it has no funds or assets to repair and complete construction of the roads and improvements. The cost to complete construction and repair of the roads and improvements in the development according to the approved subdivision plans totals $665,802.00; however, only $202,000.00 remains in the escrow account.

As a result, on February 17, 2009, the Association filed the instant complaint in the trial court. In Count I of the complaint, sounding in mandamus, the Association sought to compel the Township to complete all of the roads and improvements in the development according to the approved subdivision plans. Likewise, in Count V of the complaint, sounding in specific performance, the Association sought to compel the Township to complete all of the roads and improvements in the development according to the approved subdivision plans. In support of this claim, the Association cited *Safford v. Board of Commissioners, Annville Township*, 35 Pa.Cmwlth. 631, 387 A.2d 177 (1978) and *Kennedy v. Lehman Township*, 74 Pa.Cmwlth. 377, 459 A.2d 921 (1983).

On March 12, 2009, the Township Defendants filed preliminary objections to Counts I and V of the Complaint. On March 25, 2009, the Association filed a response to the preliminary objections. Each of the parties filed a brief in support of their respective positions.

On August 7, 2009, the trial court issued an order sustaining the Township Defendants' preliminary objections, and dismissing the claims against them sounding in mandamus and specific performance.[8]

---

7. Subsequently, the letter of credit was replaced by an escrow account.

8. The trial court stated the following, in pertinent part, in the opinion it issued in support of its order:

[The Township Defendants] objected due to immunity under the Political Subdivision Tort Claims Act, 42 [Pa.C.S.] § 8541, et seq., based on Defendants' theory that [the Association] was in fact trying to bring an action for negligence. However, actions in mandamus are not subject to the defense of sovereign immunity. Sovereign immunity does not bar suits that seek to compel state officials to carry out their duties. Unfortunately, [the Association] failed to bring this to our attention in its response to Defendants' preliminary objections. Thus, we mistakenly sustained Defendants' preliminary objections partially due to governmental immunity. However, we also sustained Defendants' demurrer for failure to plead an action in mandamus. The appellate court is empowered to affirm the trial court on any basis if the decision is correct.

[W]hile Section 511 of the [MPC] provides the authority for municipalities to complete the public improvements in land development, it does not mandate that the municipality do so. Likewise, under Section 509(f) and (h) of the MPC, the municipality *may* require the developer to post additional security and the amount of financial security *may* be increased. Pursuant to Section 309.1 of the Township [Ordinance], the amount of financial security *may* be increased. As the relevant sections of both

The Association then filed the instant appeal of the trial court's order.[9,10]

In this appeal, the Association claims: (1) the trial court erred in failing to accept as true all well-pleaded facts set forth in the complaint as well as all inferences fairly deducible therefrom; (2) the trial court erred in sustaining the preliminary objections because the Association and it members are intended third party beneficiaries of the Construction Agreement and Letter of Credit Agreement; (3) the trial court erred in sustaining the preliminary objections because equity requires that the Township provide for the completion of the roads and improvements; (4) the trial court erred in sustaining the preliminary objections because the actions of the Township's Board of Supervisors constituted willful misconduct; and (5) the trial court erred in sustaining the preliminary objections because the Association has pleaded a valid cause of action in mandamus.

■ The Association first claims that the trial court erred in failing to accept as true all well-pleaded facts set forth in the complaint as well as all inferences fairly deducible therefrom. More specifically, the Association contends that the trial court erred in failing to accept as true the

the MPC and the Township [Ordinance] are discretionary, they would not support a claim for mandamus. Although Section 6(a) of the [Construction Agreement] specifically required that after three years the amount of financial security *shall be automatically increased*, the duty was on the Developer to increase the financial security. Paragraph 6(b) only required the Township to revoke all building permits and refuse to grant new permits if the Developer failed to increase the financial security. Furthermore, the increase would be automatic only if the Developer failed to *complete* the improvements within three (3) years. Once again, it was up to the discretion of the Township Engineer as to whether the improvements were "completed." For the most part, the [Association]'s Complaint alleges *deterioration* of *defective* streets and walkways, which Developer failed to maintain or repair.

 \* \* \*

Although an action in mandamus lies on the law side of the court, equitable principles guide the Court in deciding whether or not the writ should be issued. Similar to most remedies governed by equitable principles, mandamus must be sought with reasonable diligence. The allegations in the [Association]'s Complaint and the exhibits attached thereto show that [the Association] was aware of the fact that the Developer was in default of both the [Construction] Agreement and the [Line of Credit] Agreement in 2004 and the Association became "Resident controlled" in 2006; yet [the Association] waited until 2009 to bring this mandamus action.

An incidental beneficiary is not an intended beneficiary. A party becomes a third-party beneficiary only where both parties to the contract express an intention to benefit the third-party in the contract itself. That intention must have affirmatively appeared in the contract itself. An incidental beneficiary does not have the right to enforce an agreement. [The Association] herein was only an incidental beneficiary of the [Construction] Agreement.

For the foregoing reasons, we entered the Order from which this appeal was taken. Trial Court Opinion at 3–6 (citations omitted and emphasis in original).

9. In an appeal from a trial court's order sustaining preliminary objections and dismissing a complaint, this Court's scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Muth v. Ridgway Township Municipal Authority*, 8 A.3d 1022 (Pa.Cmwlth.2010).

10. As noted by the trial court in its opinion, it is well settled that this Court may affirm the trial court's order on any basis appearing in the record. *See Feldman v. Lafayette Green Condominium Association*, 806 A.2d 497, 502 n. 3 (Pa.Cmwlth.2002) ("[W]e may affirm an order for any reason, regardless of the trial court's rationale, so long as the basis for our decision is clear on the record. *Pennsylvania State Police v. Paulshock*, 789 A.2d 309 (Pa. Cmwlth.2001).").

averment in the complaint that it was an intended third party beneficiary of the Construction Agreement.

In ruling on the Township Defendants' preliminary objections, the trial court was required to accept as true all well-pleaded allegations of material fact and all inferences reasonably deduced therefrom, but the court was not required to accept conclusions of law or expressions of opinion in the complaint. *Pennsylvania Division, Horsemen's Benevolent and Protective Association, Inc. v. Mountainview Thoroughbred Racing Association, Inc.*, 855 A.2d 957 (Pa.Cmwlth.2004). The Association's averment that it was an intended third party beneficiary of the Construction Agreement was a conclusion of law that did not need to be accepted as true in ruling on the preliminary objections. *Strutz v. State Farm Mutual Insurance Company*, 415 Pa.Super. 371, 609 A.2d 569, *petition for allowance of appeal denied*, 532 Pa. 657, 615 A.2d 1313 (1992). As a result, the trial court did not err in refusing to accept this conclusion of law as true, and Association's allegation of error in this regard is patently without merit.

■ The Association claims that the trial court erred in sustaining the preliminary objections because the Association and it members are intended third party beneficiaries of the Construction Agreement and Letter of Credit Agreement. More specifically, the Association contends that it is entitled to sue to enforce the provisions of the Construction Agreement because it was an intended third party beneficiary of the Construction Agreement.

In *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147 (1992), the plaintiffs had purchased real estate lots in a residential development and submitted building plans to the architect who was to enforce the deed restrictions within the subdivision pursuant to a contract between the architect and the developer. The plaintiffs' plans included the construction of three-car garages for their homes. The architect disapproved the plans because they were in violation of a deed restriction limiting the size of garages to either a two or a two and one-half car garages. The plaintiffs then built their homes in compliance with the deed restrictions. However, the architect did not uniformly enforce the deed restrictions, and subsequently approved building plans submitted by other homeowners for the construction of homes with three-car garages. As a result, the plaintiffs initiated a suit against the architect under the theory that they were intended third party beneficiaries of the contract between the architect and the developer.

In analyzing whether the plaintiffs were intended third party beneficiaries of the contract between the architect and the developer, the court noted the following, in pertinent part:

Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, [*Spires v. Hanover Fire Insurance Company*, 364 Pa. 52, 70 A.2d 828 (1950)], *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promise to pay money to the beneficiary or the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance. *Guy [v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983)].

*Scarpitti*, 530 Pa. at 372–373, 609 A.2d at 150–151 (emphasis in original).

In determining that the plaintiffs were, in fact, intended third party beneficiaries

of the contract, the court noted the following, in pertinent part:

> In this case, the architect is the promisor, promising to enforce deed restrictions which carry out the developer's intention to benefit the homeowners. The developer, the promisee, intends that the homeowners have the benefit of the architect's performance. Thus, it is patently clear that the parties, by establishing a vehicle for the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the [subdivision], at the time the contract was entered into. Although not individually named, [the plaintiff] homeowners were part of a limited class of persons intended to benefit from the agreement between [the architect] and [the developer], thus satisfying the second prong of *Guy* and subsection (b) of § 302 [of the Restatement of Contracts].[11] In fact, we have not been informed of any other purpose for the employment of [the architect] to review construction plans, but for the benefit of the homeowners in the subdivision. Accordingly, we find that [the plaintiff homeowners], as third party beneficiaries, have a cause of action in accord with the principles of [Section 302 of the Restatement of Contracts] and *Guy*.

*Id.* at 373–374, 609 A.2d at 151 (citations omitted).

In contrast, in the case *sub judice,* the terms of the Construction Agreement [12] do not indicate an intention of the Developer or the Township to confer intended third party status upon the Association. Initially, it must be noted that, like the contract in *Scarpitti,* the Association is not named as an intended third party beneficiary in the Construction Agreement. *See* RR at 39a–42a.

However, the terms of the Construction Agreement in this case indicate that the Developer, as promisor, was entering into the contract for the following reasons:

> **WHEREAS,** Developer desires to obtain building permits for the construction of dwellings on lots to be created by the foregoing subdivision and desires to commence the construction thereof prior to the completion of the roads, public improvements and common amenities required by the Subdivision Plan and the completion of the control measures and other conditions specified in the soil erosion and sedimentation grading provisions and thereafter offer the same or

---

11. Section 302 of the Restatement of Contracts provides:
> (1) Unless otherwise agreed between promisor and promissee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or
> (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
> Restatement (Second) of Contracts § 302 (1979).

12. As this Court has recently noted:
> [I]t is well settled that the fundamental rule in construing the provisions of a contract is to ascertain and to give effect to the intention of the parties. If the contract terms are clear and unambiguous, the intention of the parties must be ascertained from the document itself. This Court's inquiry should focus on what the agreement itself expressed, and not on what the parties may have silently intended. It is not appropriate, under the guise of contract construction, to alter the terms to which the parties expressly agreed, whether in wisdom or folly.
> *Boro Construction, Inc. v. Ridley School District,* 992 A.2d 208, 214 (Pa.Cmwlth.2010) (citation omitted).

a portion thereof to the Township for dedication upon completion.

RR at 39a. Thus, the Developer entered into the Construction Agreement to start construction of the dwelling units in the development before the completion of the roads and other improvements contained in the subdivision plans, and prior to the completion of the soil erosion and sedimentation grading requirements of the Ordinance. *Id.*

In addition, the terms of the Construction Agreement indicate that the Township, as promisee, could receive by dedication the following improvements that were to be constructed by the Developer:

9. When the installation of the above described improvements or portion thereof shall have been fully completed and approved by the Township Engineer or other person designated for that purpose by the Board of Supervisors of the Township and an offer of dedication of said improvements or portions thereof is required by the subdivision of land development approval given by the Township, Developer shall tender to the Township the following:

a. Deeds of dedication in customary form satisfactory to the Township Solicitor dedicating said roads or portions thereof as *public roads or highways;*

\* \* \*

c. A bond or other financial security at Developer's option in the amount of fifteen percent (15%) of the actual cost of said improvements to secure the structural integrity and functioning thereof in accordance with the design and specifications on the *final plan just prior to the* time of dedication of the Pumping Station and Off–Site Improvements to the Township Municipal Authority; Developer shall be liable, however, for the entire cost of repair or replacement of any said improvements. . . .;

d. An amount equal to the cost of recording said deeds, plus Township's legal expenses in connection with this agreement, whereupon Township may at any time or from time to time thereafter accept said deeds of dedication, provided however that Township shall be under no obligation to accept said tender and particularly if the said tender is made a portion of the required improvements, Township may defer its acceptance of said tender until all improvements shall have been fully completed or until such later time as Township deems to be in its best interests.

RR at 41 a–42a. Thus, the Township entered into the Construction Agreement to benefit from, through its acceptance by dedication, some of the improvements constructed by the Developer on the site at Developer's expense. *Id.*

Moreover, the terms of the Construction Agreement relating to the Developer's duty to post the required security merely provided a means by which the Township could, within its discretion, regulate the Developer's construction on the site. Indeed, the Construction Agreement specifically provided:

[I]f the financial security is not automatically increased by the Developer as required at the end of the three year period, Developer shall be in default of this agreement, and the Township may revoke all building permits and refuse to grant new building permits and occupancy permits until the proper security is posted.

RR at 40a.

Clearly then, unlike the contract in *Scarpitti*, there was no intention by the Developer or the Township to confer intended third party beneficiary status upon the Association under the Construction Agreement. The terms of the Construc-

tion Agreement clearly indicate that both Developer and the Township entered into the contract to serve their own interests; there is absolutely no indication of their intention to benefit any other party. As a result, the trial court did not err in determining that the Association was not an intended third party beneficiary to the Construction Agreement, and the Association's claim to the contrary is without merit.

■■■ The Association next claims that the trial court erred in sustaining the Township Defendants' preliminary objections and dismissing its action in equity against the Township Defendants. More specifically, the Association contends that it is entitled to equitable relief under the theory of "promissory estoppel".

However, in its appellate brief, the Association fails to direct this Court to where this theory of recovery was raised before the trial court as required by Rules 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure.[13,14] As a result, in the absence of any indication by the Association that this theory was properly raised

before the trial court, the application of this new theory will not be addressed for the first time by this Court in this appeal. *See* Pa.R.A.P. 302(a)[15]; *Riverwatch Condominium Owners Association v. Restoration Development Corporation*, 980 A.2d 674, 683 n. 21 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 603 Pa. 711, 985 A.2d 220 (2009) ("The Association raises additional allegations of error in this regard, but it has failed to direct this Court to where these issues were raised before the trial court as required by Rules 2117(c) and 2119(e)[ ]. As a result, in the absence of any indication by the Association that these claims were properly raised before the trial court, they will not be addressed for the first time by this Court in this appeal. Pa.R.A.P. 302(a); *Monroe Meadows Housing Partnership, LP v. Municipal Council of the Municipality of Monroeville*, 926 A.2d 548 (Pa.Cmwlth. 2007). *See also Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975) ('[I]t is a fundamental principle of appellate review that we will not reverse a judgment or decree

13. Rule 2117(c) provides, in pertinent part:
(c) **Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify:
(1) The state of the proceedings in the court of first instance ... at which, and the manner in which, the questions sought to be reviewed were raised.
(2) The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).
(3) The way in which they were passed upon by the court.
(4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exceptions thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal ...

Pa.R.A.P. 2117(c).

14. Rule 2119(e) provides:
(e) **Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross reference to the page or pages of the statement of the case which set forth the information relating thereto required pursuant to 2117(c) (statement of place of raising or preservation of issues), or substantially the same information.
Pa.R.A.P. 2119(e).

15. Rule 302(a) provides:
(a) **General rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

on a theory that was not presented to the trial court.') (citations omitted)."); *Walton v. Philadelphia National Bank*, 376 Pa.Super. 329, 545 A.2d 1383, 1386 (1988) (" 'The doctrine of waiver has become firmly entrenched in Pennsylvania law and it is clear that on appeal a new and different theory of relief may not be successfully advanced for the first time.' We find no evidence in the record that appellants ever raised a claim of estoppel in the court below. We therefore find this contention waived....") (citation and footnote omitted).

■ The Association next claims that the trial court erred in sustaining the preliminary objections because the actions of the Township's Board of Supervisors constituted willful misconduct. More specifically, the Association contends that, based upon the purported willful misconduct of the individual members of the Township's Board of Supervisors, the immunity provisions of the statute commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act) [16] do not apply and that the individual members of the Township's Board of Supervisors are personally liable in tort.

Again, in its appellate brief, the Association fails to direct this Court to where this theory of recovery was raised before the trial court as required by Rules 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure. In fact, in its response to the Township Defendants' preliminary objections, the Association specifically conceded:

> [A]lthough the allegations set forth in the Plaintiff's Complaint against the Defendant Township and the Defendant Township Supervisors include facts amounting to reckless, willful and wanton actions and refusal to take action, Plaintiff's claims do not sound in "tort" so as to be subject to a claim of immunity under the "Tort Claims Act".

RR at 121a.

Thus, the Association may not now seek relief based upon personal liability sounding in tort where such a theory of recovery was not raised in the trial court below.[17] As a result, in the absence of any indication by the Association that this theory was properly raised before the trial court, the application of this new theory will not be addressed for the first time by this Court in this appeal. *See Riverwatch Condominium Owners Association; Walton. See also Trident Corporation v. Reliance Insurance Company*, 350 Pa.Super. 142, 504 A.2d 285, 287 (1986) ("The lower court disallowed Trident's claim against Simkiss on the ground that Trident never properly

---

**16.** Sections 8541–8564 of the Judicial Code, 42 Pa.C.S. §§ 8541–8564. More specifically, Section 8550 provides:

> In any action against a local agency or an employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.

**17.** As noted above, the trial court granted the Township Defendants' preliminary objections, in part, pursuant to the immunity provisions of the Tort Claims Act. *See* Trial Court Opinion at 4. However, the trial court acknowledged that "[a]ctions in mandamus are not subject to the defense of sovereign immunity ... [and t]hus, we mistakenly sustained Defendants' preliminary objections partially due to governmental immunity...." *Id.* at 3–4. Nevertheless, as indicated above, it is well settled that this Court may affirm the trial court's order on any basis appearing in the record. *Feldman.*

asserted in its complaint or amended complaint that Simkiss breached its duty to use 'best efforts'. We agree and, therefore, that issue is not properly before us. *See* Pa.R.A.P. 302.").

 Finally, the Association claims that the trial court erred in sustaining the preliminary objections because the Association has pleaded a valid cause of action in mandamus. More specifically, the Association contends that the Township Defendants bound themselves, under the terms of the Construction Agreement, to complete all of the roads and improvements in the development according to the approved subdivision plans.

 Mandamus is an extraordinary writ. *McCray v. Department of Corrections*, 582 Pa. 440, 872 A.2d 1127 (2005). Mandamus will only lie to compel the official performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and the lack of an adequate and appropriate remedy at law. *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 493 A.2d 1351 (1985). Thus, "[m]andamus is not an over-the-counter remedy available on demand; rather it is dispensed sparingly and as a last resort. . . ." *Medico v. Makowski*, 793 A.2d 167, 169 (Pa.Cmwlth.2002) (citation omitted).

In Count I of the Complaint, in which it sought relief in mandamus, the Association alleged the following, in pertinent part:

50. Under the circumstances, Plaintiff does not have any other adequate remedy at law since Victoria Gardens, L.P. and the other Defendants have advised Plaintiff and/or Kennett Township that they do not have assets and that they shall not repair, maintain, install or complete roads and public improvements

in accordance with the Subdivision Plans for the Victoria Gardens Development. RR at 28a.

 However, even if the foregoing well-pleaded facts are accepted as true, they are not sufficient to support the invocation of the extraordinary and rare relief in mandamus. Indeed, as the Pennsylvania Supreme Court has noted:

In Pennsylvania the insolvency of a defendant does not create a situation where there is no adequate remedy at law. In deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success that is the determining factor. "The fact, if it be so, that this remedy may not be successful in realizing the fruits of a recovery at law, on account of the insolvency of the defendants, is not of itself or ground of equitable interference."

*Willing v. Mazzocone*, 482 Pa. 377, 383, 393 A.2d 1155, 1158 (1978) (citations omitted). Thus, on its face, the Association's complaint fails to sufficiently allege the inadequacy of its remedies at law necessary for the issuance of a writ of mandamus.

 Moreover, as noted above, in Counts II, III, IV, VI, VII, VIII and IX of its Complaint, the Association asserted claims against Herron Hill Properties, LLC, Victoria Gardens, L.P., and Yorktown Properties, LLC. In those counts, the Association sought, *inter alia*, the same relief from these developers that it had sought from the Township Defendants. *See* RR at 29a, 30a, 31a–32a, 33a, 34a, 35a, 36a. On June 30, 2009, default judgments were entered in the trial court in favor of the Association and against those defendants on all of those counts. Subsequently, on August 7, 2009, the trial court then issued the instant order sustaining the Township Defendants' preliminary objections and dismissing Counts I and V of the

Association's Complaint. Thus, in the case *sub judice*, the foregoing alternative adequate remedy at law precludes the grant of relief in mandamus. *See, e.g., Pennsylvania Tavern Association v. Pennsylvania Liquor Control Board*, 472 Pa. 567, 571–572, 372 A.2d 1187, 1189 (1977) (Per Curiam Opinion) ("In our view, an adequate remedy was available to the Appellees in this action by way of a petition to the [trial court] to enforce its own order sustaining the license suspension imposed by the Board. It has long been recognized that courts of general jurisdiction have the power to make effective whatever orders they are authorized to enter. We believe, in the circumstances of this case, that enforcement of the order should have been sought first in the [trial court]. That court, being most familiar with the questions raised and record compiled in the enforcement action, was unquestionably in the best position to consider the legal and practical consequences of the Board's proposed modification of its own order. Thus, it would be most consistent with judicial efficiency to require the court whose order is being ignored or modified to pass upon the wisdom of that action. For this reason, we hold that the Commonwealth Court abused its discretion in issuing the writ [of mandamus] in view of the availability to Appellees of an adequate alternative remedy at law.") (citation and footnote omitted).[18,19]

---

**18.** *See also* Section 2304 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67304, which provides, in pertinent part:

> (a) The board of supervisors may by ordinance enact, ordain, survey, lay out, open, widen, straighten, vacate and relay all roads ... and parts thereof which are located wholly or partially within the township.
> * * *
> (c) When any petition is presented to the board of supervisors requesting the board of supervisors to open or vacate a specific road in the township and the board of supervisors fails to act on the petition within sixty days, the petitioners may present their petition to the court of common pleas which shall proceed thereon under the act of June 13, 1836 (P.L. 551, No. 169), referred to as the General Road Law. If the board of supervisors acts on the petition but denies the request of the petition, the board of supervisors shall notify the person designated in the petition of its denial. If the request of the petition is denied, the petitioners, or a majority of them, may within thirty days after receipt of the notice petition the court of common pleas for the appointment of viewers and proceedings shall be taken thereon under the General Road Law.

53 P.S. § 67304(a), (c) (footnote omitted); *Hanscom v. Bitler*, 883 A.2d 1111, 1114 (Pa. Cmwlth.2005) ("The Hanscoms in this case fail to demonstrate an established legal right to the [mandamus] relief they request. Moreover, as the Township suggests, they have an appropriate and adequate remedy through the procedure of [Second Class Township] Code Section 2304, 53 P.S. § 67304, by petitioning the Township supervisors to lay out and open the street. *See also Lank v. Hughes*, 402 Pa. 284, 167 A.2d 268 (1961).") (footnote omitted).

**19.** The opinion of this Court in *Safford* does not compel a different result. In *Safford*, there is absolutely no indication that the landowners had an adequate remedy at law, and the township "[c]oncede[d] that it agreed and [was] obliged to pave and accept the two streets, if and when other parties should install rough grading and curbing...." *Safford*, 387 A.2d at 181.

In contrast, in this case, the Association's alternative adequate remedies at law, as outlined above, preclude the grant of relief in mandamus. Moreover, the Township did not explicitly bind itself to pave the streets within the development, nor was the Township required to accept the streets if offered by the Developer for dedication. As a result, the Association's reliance upon *Safford*, and its progeny, is misplaced. *See Stambaugh v. Township of Reed*, 86 Pa.Cmwlth. 316, 484 A.2d 853, 856 (1984) ("[N]or did Reed Township make any explicit promise to pave on the condition that the developer install grading,

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 21st day of January, 2011, the order of the Court of Common Pleas of Chester County, dated August 7, 2009 at No. 09–01663, is AFFIRMED.

sewers and curbs, as the township in *Safford* did. Therefore, contrary to the court en banc's conclusion, *Safford* is not controlling here, and does not mandate the inclusion of Reed Township as jointly and severally liable with [the developer], who, in addition to fulfilling his ordinance obligation to grade the streets, must also fulfill his promise to the lot owners by paving the streets to township specifications. This case also differs from *Safford* with regard to the municipality's obligation to accept the streets. In *Safford,* the township expressly obliged itself to accept the streets if the developer properly graded them. Here, there was no comparable agreement in advance by the Township of Reed. As reflected by the notation on the [subdivision] plan, approval of a plan and acceptance of streets for public use are two distinct matters. Where a plan includes a dedication of streets, neither the plan approval nor the developer's completion of the streets obligates the town-

ship to accept them. *See* §§ 514 and 404 of the MPC, 53 P.S. §§ 10514 and 10404, read in conjunction. Therefore, acceptance is a matter of discretion with the township, *see* Section 1147 of the Second Class Township Code, 53 P.S. § 66147 [repealed and replaced by Sections 2316, 2317, *as amended,* 53 P.S. §§ 67316, 67317].") (footnote omitted). *See also* Section 2317(g) of the Second Class Township Code, 53 P.S. § 67317(g) ("No approval of plans by the board of supervisors shall obligate or require the township to construct, reconstruct, maintain, repair or grade the roads."); *Hanscom,* 883 A.2d at 1113 ("The plain language of [Second Class Township] Code Section 2316 makes the acceptance of a proposed dedication discretionary. It is the act of acceptance of a dedicated parcel of land that makes the dedication complete. *Lillo v. Moore,* 704 A.2d 149 (Pa.Super.1997), *petition for allowance of appeal denied,* 555 Pa. 713, 724 A.2d 349 (1998).").